GWENDOLYN HOFFMAN LAMB, Executrix of the Estate of Thomas Wade Lamb v. WEDGEWOOD SOUTH CORPORATION, STATLER HILTON, INC., HILTON INNS, INC., W. H. WEAVER, W. H. WEAVER CONSTRUCTION COMPANY, INC., HARRY R. DUDLEY, JR., Individually, LOUIS RIGHTMIER, Individually, THOMAS H. B. MORRISETTE, Individually, DUDLEY, RIGHTMIER, MORRISETTE AND ASSOCIATES, a Professional Association, DARYL TEAGUE, W. E. GRIFFIN and TED CRADDOCK

No. 8115SC234

(Filed 16 February 1982)

1. Negligence § 30.1—wrongful death—insufficient evidence of negligence

In an action to recover for the wrongful death of a motel guest, the evidence on a motion for summary judgment was insufficient to show negligence on the part of defendant night manager where it showed that defendant went to the sixth floor of the motel to check on a disturbance; he twice stopped a fight between decedent and another person; and the fight resumed a third time and decedent was killed when he fell through a motel window.

2. Negligence § 52.1— motel guest—room on one floor—invitee while on another floor

A motel guest who had a room on the seventh floor was still an invitee of the motel while he was in the hall on the sixth floor.

3. Negligence § 19— negligence of off-duty employee not imputed to motel

Any negligence by a motel bartender in the death of a motel guest was not imputed to the motel owner where the bartender was attending a private party in a motel room at the time he began an altercation with the guest which led to the guest's death, and he was not engaged in any duty for the motel at the time of the guest's death.

4. Negligence § 57.10— fall through motel window—absence of guardrail or tempered glass—negligence by motel

In an action to recover for the wrongful death of a motel guest who fell through a sixth floor window in the hall of the motel, the evidence on motion for summary judgment presented a genuine issue of material fact as to the negligence of the motel in maintaining the window with plate glass rather than tempered glass and without any guardrail or other safety devices.

5. Negligence § 50.1— death of motel guest—liability of motel franchisor

In an action to recover for the wrongful death of a motel guest who fell through a window on the sixth floor of the motel, the jury could find that the franchisor of the motel had such a right to direct the motel owner in the operation of the motel that the owner was an agent of the franchisor at the time of the accident or that the franchisor had enough control over the maintenance of the motel that it was negligent in failing to see that the proper type of windows were in place where the franchise agreement provided that the owner would operate the motel in accordance with the franchisor's operating manual

and that the franchisor had the right to inspect the premises of the motel to see that it was so operated.

6. **Architects § 3; Courts § 1; Limitation of Actions § 4.2— actions against contractor or architect — statute of limitations — constitutionality**

The statute requiring an action against contractors and architects arising out of a defective condition of an improvement to realty to be brought within six years after the performance or furnishing of services and construction, G.S. 1-50(5), does not violate the Fourteenth Amendment to the U.S. Constitution or the law of the land clause of Article I, Section 19 of the N.C. Constitution, does not grant an exclusive or separate emolument or privilege in contravention of Article I, Section 32 of the N.C. Constitution, and does not violate provisions of Article I, Section 18 of the N.C. Constitution guaranteeing access to the courts for redress of injuries. Therefore, the statute barred a wrongful death action against defendant architects for negligence in the design of a motel where the duties of the architects in the design and construction of the motel were completed more than eleven years prior to the death of plaintiff's intestate.

Judge WELLS dissenting in part.

APPEAL by plaintiff and defendants Wedgewood South Corporation; Statler Hilton, Inc.; Hilton Inns, Inc.; Harry R. Dudley, Jr., Individually; Louis Rightmier, Individually; Thomas H. B. Morrisette, Individually; Dudley, Rightmier, Morrisette and Associates, a Professional Association; and Ted Craddock from *Cornelius, Judge.* Judgment entered 3 November 1980 in Superior Court, ORANGE County. Heard in the Court of Appeals 14 October 1981.

This is an action for wrongful death. Dr. Thomas Wade Lamb died as the result of injuries received on the premises of the Hilton Inn in Greensboro on 25 August 1977. Wedgewood South Corporation owned and operated the motel at the time of Dr. Lamb's death. Wedgewood South Corporation was licensed by Hilton Inns, Inc., which corporation was formerly known as Statler Hilton, Inc., to operate the motel as a Hilton Inn. Ted Craddock was on duty as night manager of the Hilton Inn when Dr. Lamb was involved in the incident which caused his death. W. H. Weaver is the principal stockholder and chief executive officer of Weaver Construction Company, Inc. which in 1965 constructed the building which was operated as the Hilton Inn in Greensboro. Harry R. Dudley, Jr., Louis Rightmier, and Thomas H. B. Morrisette are licensed architects who were working either as a partnership or through a professional association in Richmond, Vir-

ginia, when the building was planned and constructed. W. E. Griffin operated a bar known as the Underground Lounge in the Hilton Inn on 25 August 1977. Darrel Teague worked for Mr. Griffin at that time as a bartender and in the performance of other duties.

The pleadings and other papers filed in this case established that Dr. Thomas Wade Lamb was a paying guest of the Hilton Inn in Greensboro on 25 August 1977. He had a room on the seventh floor of the motel. At approximately 2:30 a.m., he went to the sixth floor and attempted to gain entrance to a room in which there were several people including members of a band known as The Spiral Staircase which had played earlier in the evening at the Underground Lounge located in the Hilton Inn. Dr. Lamb wanted to talk to Debbie Ryan, a female performer with the band. He was told she did not want to talk to him and the door was closed. Dr. Lamb again knocked on the door and Darrel Teague, who was in the room, told Dr. Lamb that Miss Ryan did not wish to speak to him. Dr. Lamb attempted to force his way into the room and there was a struggle. Darrel Teague and the manager of the band forced Dr. Lamb out of the room and the three of them proceeded down the hall toward the elevator, followed by other persons who had been in the room.

There is some conflict as to what happened next. Darrel Teague and Ted Craddock testified by deposition that Dr. Lamb and Darrel Teague struggled in front of the elevator just as Ted Craddock stepped from the elevator upon which he had come to the sixth floor in response to a call. Ted Craddock separated the two men and asked them to leave the sixth floor with him. They struggled again and Ted Craddock separated them for the second time. Ted Craddock then asked them to leave the sixth floor and started into the elevator. As Mr. Craddock was entering the elevator, Dr. Lamb lunged at Darrel Teague, missed him, and fell through a window to his death. The plaintiff filed affidavits by Russell Livingston and Thomas A. Berry which contradict the account of Dr. Lamb's death as stated by Darrel Teague and Ted Craddock. Mr. Livingston and Mr. Berry both stated they were in the room when Dr. Lamb tried to gain entrance and each stated they followed Dr. Lamb and Darrel Teague down the hall. Mr. Livingston stated: "When Dr. Lamb and the bartender reached the elevator, the bartender pushed Dr. Lamb towards the wall

beside the elevator. In one motion, the doctor turned. The two men seemed to exchange places, and as Dr. Lamb turned, the bartender pushed, the doctor went through the window backwards." Mr. Berry stated: "At that point, the bartender was pushing Dr. Lamb up against the wall. It looked as though Dr. Lamb was trying to twist out of the way to keep from being pinned against the wall. It looked to me as if in one fluid motion, the bartender pushed, Dr. Lamb twisted and the momentum of the push sent Dr. Lamb through the window backwards."

The plaintiff first sued Wedgewood South Corporation, the owner of the Hilton Inn in Greensboro, alleging it was negligent in maintaining a window without sufficient strength or protective devices to prevent a person from falling through it. Wedgewood South Corporation answered the complaint and filed a third party complaint against W. H. Weaver, W. H. Weaver Construction Company, Inc., Harry R. Dudley, and Louis Rightmier. In the third party complaint the original defendant alleged that if it were negligent in maintaining the window as the plaintiff contended, Weaver and W. H. Weaver Construction Company, Inc. were negligent in the construction of the building and that Dudley and Rightmier were negligent as architects who designed the building. Weaver and W. H. Weaver Construction Company, Inc. cross claimed against Dudley and Rightmier. The third party complaint against Dudley and Rightmier and the cross claim against them by Weaver were then dismissed on the ground that Dudley and Rightmier were residents of Virginia and the Superior Court of Orange County did not have jurisdiction over them. No appeal was taken from the order dismissing the complaint. The plaintiff then filed an amended complaint in which all the defendants in this case were made parties. Hilton Inns, Inc. filed an answer and cross claimed against Weaver and the architects and their professional association for contribution. The architects moved to dismiss as to them the claim of the plaintiff and the cross claim of Hilton Inns, Inc. This motion to dismiss was denied.

After all defendants had filed answers, they made motions for summary judgments. On 16 September 1980, Judge Bailey denied the motions for summary judgment by Wedgewood South Corporation, Statler Hilton, Hilton Inns, Inc., Darrel Teague, Ted Craddock, and W. E. Griffin. On 3 November 1980, Judge Cor-

nelius entered an order allowing the motion for summary judg-
ment by the architect defendants as to the plaintiffs and denied it
as the claim of Hilton Inns, Inc. for contribution. The plaintiff, the
architects, Hilton Inns, Inc., Wedgewood South Corporation, and
Ted Craddock appealed.

*Smith, Anderson, Blount, Dorsett, Mitchell and Jernigan, by
James G. Billings, for plaintiff appellant.*

*Spears, Barnes, Baker and Hoof, by Alexander H. Barnes, for
defendant appellants Wedgewood South Corporation, Statler
Hilton, Inc., Hilton Inns, Inc., and Ted Craddock.*

*Emanuel and Thompson, by Robert L. Emanuel, for defend-
ant appellants Harry R. Dudley, Jr., Louis Rightmier, Thomas H.
B. Morrisette, and Dudley, Rightmier, and Morrisette Associates.*

WEBB, Judge.

At the outset we note that this action involves multiple par-
ties. Judge Cornelius, in his order allowing the architects' motion
for summary judgment as to the plaintiff and denying it as to
Hilton Inns, Inc., found there was no just reason for delay in
entering the order. The judgment as to the architects is ap-
pealable pursuant to G.S. 1A-1, Rule 54(b). *See Industries, Inc. v.
Insurance Co.*, 296 N.C. 486, 251 S.E. 2d 443 (1979). In our discre-
tion we shall consider the other appeals.

### TED CRADDOCK'S APPEAL

[1]    We consider first the appeal of Ted Craddock. The pleadings,
affidavits, and depositions filed in support and opposition to the
motions for summary judgment show that Mr. Craddock was on
duty as night manager of the Hilton Inn on 25 August 1977. In
response to a call he went to the sixth floor to check on a distur-
bance. As he got off the elevator, a struggle was in progress be-
tween Mr. Teague and Dr. Lamb. Mr. Craddock stopped this
fight. Mr. Teague and Dr. Lamb resumed the fight and Mr. Crad-
dock separated them again. The fight was started for the third
time and Dr. Lamb was killed. There is no forecast of evidence
which shows Ted Craddock was doing what a reasonably prudent
man should not have done under the circumstances or that he did
not do what a reasonably prudent man should have done under

the circumstances. *See* 9 Strong's N.C. Index 3d, *Negligence* § 1 (1977) for a definition of negligence. Mr. Craddock's motion for summary judgment should have been granted. *See Moore v. Fieldcrest Mills, Inc.,* 296 N.C. 467, 251 S.E. 2d 419 (1979).

## WEDGEWOOD SOUTH CORPORATION'S APPEAL

[2] Wedgewood South Corporation, relying on *Jones v. Bland,* 182 N.C. 70, 108 S.E. 344 (1921) and 62 Am. Jur. 2d, *Premises Liability* § 54 (1972) argues first that when Dr. Lamb, who had a room on the seventh floor, went to the sixth floor and engaged in an altercation, he lost his status as an invitee and became a trespasser. For that reason Wedgewood South argues it owed no duty to Dr. Lamb except not to injure him willfully or wantonly and there being no evidence of willful or wanton negligence, its motion for summary judgment should have been allowed. In the instant case whatever Dr. Lamb's status may have been when he was attempting to enter the room all the evidence shows he was not attempting to enter the room when he went through the window. He was an invitee when he was in the hall on the sixth floor of the Hilton Inn.

Wedgewood South also argues that all the evidence shows that Dr. Lamb's own willful and wanton negligence was a proximate cause of his death. It contends that the evidence shows Dr. Lamb, by his own action in engaging in a fight, caused his own death. We do not believe this is the only conclusion the jury could make from the evidence. The evidence shows the fight was not continuous as the participants moved down the hall. If the jury should believe the version as stated by Mr. Livingston and Mr. Berry, they could find that Dr. Lamb's conduct was not a proximate cause of his death.

[3] We agree with Wedgewood South that any negligence of Darrel Teague may not be imputed to it. All the evidence shows that Mr. Teague had left the Underground Lounge and would not return until the next working day. If he was employed by Wedgewood South Corporation he was not engaged in any duty for it at the time of Dr. Lamb's death. He was attending a party given by some members of The Spiral Staircase at the time the altercation began. He testified in his deposition that in his job he felt some responsibility to protect members of the band. We do

not believe this duty extended to a party on the sixth floor of the motel after Mr. Teague had left his work in the Underground Lounge.

[4]    Wedgewood South also contends the evidence negates a finding that it maintained the window in such a manner that it would not withstand the force of a person falling against it. The plaintiff filed affidavits by Joseph T. Pentecost, Director of the School of Ceramic Engineering at the Georgia Institute of Technology; Dale A. Blosser, an architect; and Ronald E. Kirk, a licensed professional engineer. Each of them stated that if the jury should find the window had been maintained from the time the building was constructed in its original condition with plate glass rather than tempered glass and without any guardrail or other safety devices that in his opinion this would not be in accordance with acceptable construction design criteria for such a window. We hold that the jury could find from this testimony that a reasonable and prudent man would have known that this window was hazardous and Wedgewood South Corporation's failure to replace the glass or construct a protective device was a proximate cause of Dr. Lamb's death.

## HILTON INNS, INC. APPEAL

[5]    Hilton Inns, Inc. contends its motion for summary judgment should have been allowed because its only connection with the Hilton Inn in Greensboro was through an agreement under the terms of which it gave Wedgewood South a franchise to operate the motel in Greensboro as a Hilton Inn. We can find no cases in North Carolina dealing with the tort liability of a franchisor to a third person. There have been cases in other jurisdictions dealing with this subject. *See* Comment, *Liability of a Franchisor for the Acts of the Franchisee*, 41 So. Cal. L. Rev. 143 (1967) and Stuart, *A Franchisor's Liability for the Torts of His Franchisee*, 5 Univ. of San Francisco L. Rev. 118 (1970). The franchise agreement states specifically that Wedgewood South is not an agent of Hilton Inns, Inc. However, we do not believe this is determinative. Under the agreement, Wedgewood South agreed to operate the Inn in accordance with Hilton's operating manual and Hilton Inns, Inc. had the right to inspect the premises of the Inn to see that it was so operated. The operating manual sets out "the policies, practices, and standards of the System for hotel and

motel operation." Wedgewood South's duties under the agreement required it to "operate, furnish, maintain and equip the Hotel and related facilities . . . in accordance with the provisions . . . of the Operating Manual." We believe from this evidence a jury could find that either Hilton Inns, Inc. had such a right to direct Wedgewood South Corporation in the operation of the motel that Wedgewood South was an agent of Hilton Inns, Inc. at the time of the accident, or that Hilton Inns, Inc. had enough control over the maintenance of the Inn that it was negligent in not seeing that the proper type of windows were in place.

HARRY R. DUDLEY, JR., LOUIS A. RIGHTMIER, THOMAS

H. B. MORRISETTE, AND DUDLEY, RIGHTMIER, MORRISETTE AND

ASSOCIATES, A PROFESSIONAL CORPORATION, APPEAL

[6] The duties of the architects in the construction of the building were completed more than 11 years prior to 25 August 1977. This motion for summary judgment was granted as to the plaintiff's claim against them on the ground it was barred by the statute of limitations. G.S. 1-50(5). The motion was denied as to the claim of Hilton Inns, Inc. against them for contribution. At the time this action was instituted, G.S. 1-50(5) provided in part:

> "No action to recover damages for . . . wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than six (6) years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action."

The plaintiff contends she should not be barred by this statute from proceeding against the architects. She argues that it violates the equal protection clause of the Fourteenth Amendment to the

United States Constitution as well as Article I, Sections 18, 19, and 32 of the Constitution of North Carolina. We can find no North Carolina cases applying the due process clause of the Fourteenth Amendment or the law of the land clause of Article I, Section 19 of the Constitution of North Carolina to G.S. 1-50(5). There have been many cases from other jurisdictions applying the Fourteenth Amendment to statutes similar to G.S. 1-50(5). *See Kallas Mill Work Corp. v. Square D Co.,* 66 Wis. 2d 382, 225 N.W. 2d 454 (1975); *Yakima Fruit and Cold Storage Co. v. Central Heating and Plumbing Co.,* 81 Wash. 2d 528, 503 P. 2d 108 (1973); *Fujioka v. Kam,* 55 Hawaii 7, 514 P. 2d 568 (1973); *Rosenburg v. Town of North Bergen,* 61 N.J. 190, 293 A. 2d 662 (1972); *Josephs v. Burns,* 260 Or. 493, 491 P. 2d 203 (1971); *Skinner v. Anderson,* 38 Ill. 2d 455, 231 N.E. 2d 588 (1967).

The plaintiff contends that by allowing contractors and architects to be subject to this six year statute of limitations while not including manufacturers, materialmen, and suppliers in the class, the General Assembly has created a class with no rational basis. The plaintiff argues that there is also no rational basis for excluding from the class persons in possession and control of the property. The plaintiff concedes that architects perform different functions in the construction industry than manufacturers, materialmen, and suppliers and the proof of the violation of a reasonable standard of care is different for each of these professions and trades. Plaintiff argues this is a distinction without a difference. We believe that in determining whether a class has a rational basis that if there is a substantial difference between those who are to be classified, the legislature may create a class based on this difference. A court may not hold the classification to be unconstitutional because it disagrees with the wisdom of adopting the statute. We believe the differences between architects and manufacturers, materialmen, and suppliers so far as functions in the construction industry and the proof of negligence provides a rational basis for the creation of this class. We also believe there is enough difference between those in possession and control of the property and those who are not so that there is a rational basis for excluding those in possession and control from the class. Those in possession and control are in a better position to know the condition of the property and are able to exercise a continuing control over the property than those who are not. *See*

---

---

*Sellers v. Refrigerators, Inc.*, 283 N.C. 79, 194 S.E. 2d 817 (1973) for a case which holds the landowner plaintiff was excluded from the class created by G.S. 1-50(5). *Sellers* did not deal with the constitutional question. We hold the class created by G.S. 1-50(5) has a rational basis and it does not violate the Fourteenth Amendment to the United States Constitution or the law of the land clause of Article I, Section 19 of the Constitution of North Carolina. For the same reasons it does not grant an exclusive or separate emolument or privilege in contravention of Article I, Section 32 of the Constitution of North Carolina.

The plaintiff also contends G.S. 1-50(5) violates Article I, Section 18 of the Constitution of North Carolina which provides:

"All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay."

We realize another panel of this Court has held G.S. 1-50(6), which is a statute of limitations dealing with product liability and very similar to G.S. 1-50(5), to be unconstitutional under the above section. *See Bolick v. American Barmag Corp.*, 54 N.C. App. 589, 284 S.E. 2d 188 (1981). In that case the injury did not occur until more than six years after the product was sold. This Court reasoned that the above section of our constitution guaranteed a remedy for injuries. This Court said that by barring this claim before it arose the plaintiff had been denied his access to the courts in contravention of Article I, Section 18 of the Constitution of North Carolina. We do not believe our Constitution so restricts the General Assembly. We believe our Constitution guarantees access to the courts to those who have claims but it does not in all cases forbid the General Assembly from defining or abolishing claims which arise under the common law. In this case the General Assembly has barred a claim which arose more than six years after the last act of the architects against whom the claim is asserted. We hold the legislature had a right to do this. There was a dissent in *Bolick* and the case has now been appealed to our Supreme Court. We would be more hesitant in not following a precedent of this Court if the case had been finally determined.

The court did not grant the architects' motion for summary judgment as to the claim of Hilton Inns, Inc. for contribution

against the architects. We hold this was error. In excluding persons from the provisions of G.S. 1-50(5) the statute is in the conjunctive. It requires that to be excluded a party must be in "actual possession and control" of the property. We can find no evidence that Hilton Inns, Inc. was in actual possession. As we read the licensing agreement it does not give Hilton Inns, Inc. any right to possess the property. We hold that Hilton Inns, Inc. is not excluded from the coverage of G.S. 1-50(5) and is barred by this statute in its claim against the architects.

We hold that the claim against Ted Craddock and the claim for contribution by Hilton Inns, Inc. against the architects should have been dismissed. We affirm the order allowing summary judgment for the architects on plaintiff's claim against them and the orders denying the motions for summary judgment by Wedgewood South Corporation and Hilton Inns, Inc. on the plaintiff's claim against them.

Affirmed in part; reversed and remanded in part.

Judge MARTIN (Robert M.) concurs.

Judge WELLS dissents in part and concurs in part.

Judge WELLS dissenting in part.

I dissent from the portions of the majority opinion which (1) affirm summary judgment for defendant architects and their professional association as to plaintiff's cause against them and (2) hold that defendant Hilton Inns, Inc.'s cross-claim against them is barred by the provisions of G.S. 1-50(5). Following the reasoning of this Court in *Bolick v. American Barmag Corp.*, 54 N.C. App. 589, 284 S.E. 2d 188 (1981), dealing with a similar statute of limitations, G.S. 1-50(6), I am persuaded that the provisions of G.S. 1-50(5) violate the provisions of Article I, Section 18 of the North Carolina Constitution.

I also dissent from that portion of the majority opinion which holds that defendant Craddock's motion for summary judgment should have been allowed. Under the forecast of evidence before the trial court, this issue is for the jury. *See generally, Vassey v. Burch*, 301 N.C. 68, 269 S.E. 2d 137 (1980).

I concur in all other portions of the majority opinion.