ELIZABETH GAMBLE DEACONESS HOME ASSOCIATION, D.B.A. THE CHRIST HOSPITAL, APPELLANT, *v.* TURNER CONSTRUCTION COMPANY ET AL., APPELLEES.

(No. C-830155—Decided April 18, 1984.)

*Messrs. Smith & Schnacke, Mr. Leon L. Wolf* and *Ms. Padma Tatta Cariappa,* for appellant.

*Messrs. Frost & Jacobs* and *Mr. Gary L. Herfel,* for appellee Turner Construction Company.

*Messrs. Rendigs, Fry, Kiely & Dennis* and *Mr. W. Roger Fry,* for appellees Harry Hake & Partners, Inc., Harry Hake III, Harry Hake & Harry Hake, Jr., and Associates, Architects.

BLACK, J.  R.C. 2305.131 sets forth a ten-year bar to any action against architects, engineers, builders and others, for injuries to body or property "arising out of the defective and unsafe condition of an improvement to real property."[1]

---

[1] R.C. 2305.131 reads in full:

"No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of said injury, shall be brought against any person performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement to real property, more than ten years after the performance or fur-

The statute obviously applies to third-party claims in tort. The dispositive inquiry in this appeal is whether that bar applies to claims asserted by a property owner against an architect and a builder for breach of contract, breach of implied warranties or negligence. The trial court stated that it was bound by our decision in *Board of Trustees of the Public Library of Cincinnati and Hamilton County* v. *Strauss* (Nov. 15, 1978), Hamilton App. No. C-77383, unreported, and held that all claims, whether in contract or in tort, are barred by the ten-year statute. We do not so read *Strauss*. We hold that R.C. 2305.131 bars only actions in tort, and that it is a constitutional enactment.

I

Plaintiff is a charitable, nonprofit corporation that owns and operates The Christ Hospital in Cincinnati. On December 12, 1962, it entered into a written agreement for "future projects and studies" with Harry Hake & Harry Hake, Jr. and Associates, Architects (hereafter referred to as "Hake," intending to include also the other two defendants who successively engaged in rendering architectural services). The agreement was in the form of a letter that specifically incorporated the terms of the printed Standard Form of Agreement Between Owner and Architect (AIA Document B-131, 1961 Edition). The Standard Form provides, *inter alia,* for "Basic Services of The Architect," and in paragraph C I (4) (c)[2] for the responsibilty of the architect during the construction phase of the project. Under this architectural contract, Hake made certain recommendations at plaintiff's request about the construction of a twelve hundred car garage on the hospital premises, and these having been approved, Hake prepared the necessary "contract documents" (drawings and specifications) for the construction. On May 15, 1967, plaintiff entered into a construction contract with defendant Turner Construction Company (hereinafter referred to as "Turner") using the Standard Form of Agreement Between Owner and Contractor (AIA Document

nishing of such services and construction. This limitation does not apply to actions against any person in actual possession and control as owner, tenant, or otherwise of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought."

[2] Paragraph C I (4) (c) of the architectural contract reads in full:

"(c) The Architect will make periodic visits to the site to familiarize himself generally with the progress and quality of the work and to determine in general if the work is proceeding in accordance with the Contract Documents. He will not be required to make exhaustive or continuous on site inspections to check the quality or quantity of the work and he will not be responsible for the Contractors' failure to carry out the construction work in accordance with the Contract Documents. During such visits and on the basis of his observations while at the site, he will keep the Owner informed of the progress of the work, will endeavor to guard the owner against defects and deficiencies in the work of Contractors, and he may condemn work as failing to conform to the Contract Documents. Based on such observations and the Contractors' Applications for Payment, he will determine the amount owing to the Contractor and will issue Certificates for Payment in such amounts. These Certificates will constitute a representation to the Owner, based on such observations and the data comprising the Application for Payment, that the work has progressed to the point indicated. By issuing a Certificate for Payment, the Architect will also represent to the Owner that, to the best of his knowledge, information and belief based on what his observations have revealed, the quality of the work is in accordance with the Contract Documents. He will conduct inspections to determine the dates of substantial and final completion and issue a final Certificate for Payment."

A101, September 1966 Edition), obligating Turner to comply with Hake's contract documents. Construction was begun in the spring of 1967 and completed in March 1968. Full payment was made to Turner by plaintiff relying on Hake's "certificates for payment" in which Hake certified that the work had progressed as to require the payments periodically billed by Turner, all pursuant to paragraph C I (4) (c) of the architectural contract.

Early in 1978, plaintiff's employees noticed that some concrete surfaces were deteriorating excessively fast. Plaintiff determined that chloride-induced corrosion was the cause of the deterioration, accelerated by the installation of inadequate concrete cover over the steel reinforcing bars and by the application of high porosity concrete. Approximately ten percent of the garage was adversely affected, and plaintiff alleges that the useful life of the garage was reduced from forty to fourteen years. The record does not reveal what, if any, efforts were made to correct the condition or to settle the responsibility for it.

On May 6, 1982, or approximately fourteen years and one month after the garage had been completed, plaintiff filed the instant complaint against Turner and Hake, alleging four separate claims against Turner and two against Hake. The four claims against Turner are: breach of the express promise in the construction contract to comply with the contract documents; breach of express warranties; breach of three implied warranties, *i.e.,* that materials would be fit for the intended use, that the garage would be constructed in a workmanlike manner, and that it would be reasonably fit for its intended purpose over a reasonable life; and negligence in construction of the garage. The two claims against Hake are breach of the express terms of the architectural contract, and negligence in failing to furnish effec-

tive supervision over Turner's construction. Plaintiff demanded damages of $6,050,000.

Hake filed a motion to dismiss on grounds the suit was not filed within the ten-year bar of R.C. 2305.131. This motion was treated by the court as a motion for summary judgment, and it was disposed of along with Turner's motion for summary judgment on the same statutory grounds. The trial court granted both motions, relying on *Strauss,* and entered judgment for the defendants.

On appeal, plaintiff presents three assignments of error: first, that the court erred in not finding R.C. 2305.131 to be unconstitutional; second, that the court erred in barring plaintiff's action under R.C. 2305.131 rather than applying the fifteen-year statute of limitations for written contracts found in R.C. 2305.06; and third, that the trial court erred in its interpretation of and adherence to *Strauss.* We will turn our attention first to the second and third assignments of error, because we believe that our decision about the applicability of R.C. 2305.131 is dispositive of this appeal.

## II

To state succinctly our decision about the issues underlying the second assignment of error, we hold that R.C. 2305.131 applies only to claims in tort. We rely on the language chosen by the legislature, as well as the apparent purpose of the statute.

We note, first, that the bar of the statute is not against the bringing of a suit, but against the continuance of the right to sue. The claims to which the statute applies cease to exist after the ten-year period. The statute provides an absolute nullification of the right to sue. See *Kittson County* v. *Wells, Denbrook & Associates, Inc.* (1976), 308 Minn. 237, 241 N.W. 2d 799. This type of statute is

sometimes referred to as a "statute of repose" or a "statute of nullification."

Turning to the language of the statute, we note that the actions which it bars are those for damages for injury to person or property arising out of the defective and unsafe condition of an improvement to real property, and that the statute does not bar actions against those persons in actual possession and control of the real estate improvement at the time the defective and unsafe condition constitutes the proximate cause of the claimed injury. These are terms generally (if not exclusively) used in the definition and description of torts; they are not normally employed in contract or warranty law. This language demonstrates to us an intent to limit the bar to actions in tort.

Further, while we have no legislative history to help us interpret the statute, we can note, as other courts have, that a wave of political pressure caused the adoption of statutes of limitations or statutes of repose barring damage claims against architects, engineers and builders. *E. A. Williams, Inc.* v. *Russo Development Corp.* (1980), 82 N.J. 160, 411 A. 2d 697; *Kittson County, supra.* In Comment, Limitation of Action Statutes for Architects and Builders — Blueprints for Non-action (1969), 18 Catholic U.L. Rev. 361, it is stated:

"* * * These statutes resulted from pressures brought to bear upon state legislatures by the architectural profession and construction industry after a major extension of their potential liability. The shelter of the privity of contract doctrine, which insulated architects and builders from liability to third parties long after the doctrine's demise in manufacturers' product liability cases, was shattered in the early 1960's."

This suggests that the design of the statute was to limit actions in tort.

Finally, we note that the Ohio Legislature did not use language that would have expressly brought actions in contract within the ambit of the statute. Other jurisdictions have expressly included contractual claims. See, *e.g.,* New Jersey Stat. Ann., Cum. Supp., Section 2A:14-1.1; Kentucky Rev. Stat. Ann., Section 413.135; Minn. Stat., Section 541.051, Subdivision 1. The Model Statute endorsed by the American Institute of Architects in 1967 quite clearly bars actions "whether in contract (oral or written, sealed or unsealed), in tort or otherwise." The absence of any specific reference to contract actions adds strength to our conclusion that the Ohio statute applies only to actions in tort.

Our decision is in agreement with those of other courts; see *Securities-Intermountain, Inc.* v. *Sunset Fuel Co.* (1980), 289 Ore. 243, 611 P. 2d 1158; *North Carolina State Ports Authority* v. *Lloyd A. Fry Roofing Co.* (1978), 294 N.C. 73, 240 S.E. 2d 345; *Duncan* v. *Schuster-Graham Homes, Inc.* (1978), 194 Colo. 441, 578 P. 2d 637; *Kittson County, supra.*

Rights enforceable as torts differ from rights enforceable as contracts both in the nature of the interest protected and in the origin of the duties and rights that are enforceable at law. "Tort actions are created to protect the interest in freedom from various kinds of harm. * * * Contract actions are created to protect the interest in having promises performed." Prosser, (4 Ed. 1971) 613, Section 92. Torts are based on duties of conduct that are imposed by law, stem from general social policy, and protect all persons within range of the harm or injury to be anticipated from a breach of the duty of conduct. Contractual duties, on the other hand, arise from the specific agreement of the parties and are owed only to those who exchange the promises contained in the

agreement or are "in privity."[3] The hazards created by defective and unsafe conditions in real estate improvements fall in the tort category. Economic losses arising from failure of the architects, engineers and builders to carry out the promises set forth in their contracts with the property owners fall in the contract category.

Turning to plaintiff's complaint in this appeal, those claims that arise *ex contractu* are governed by the fifteen-year limitation of R.C. 2305.06,[4] and those that arise *ex delicto* are barred by R.C. 2305.09(D) or 2305.131, or both. The claims that are clearly *ex contractu* on the face of the complaint are: the first, for breach by Turner of the express provisions of the construction contract; the second, for breach by Turner of express warranties, assuming *arguendo* that plaintiff can prove both the existence and the breach of express warranties over and beyond the express provisions addressed in the first claim; and the fifth, for breach by Hake of the express provisions of the architectural contract. These causes of action ac-crued, we believe, when the contracts were fulfilled and completed in March 1968. The suit was filed within fifteen years of accrual, and was not barred by R.C. 2305.06.

The claims that are clearly *ex delicto* on the face of the complaint are: the fourth, for negligent construction by Turner proximately causing damage; and the sixth, for negligent supervision by Hake proximately causing damage. Without deciding at this time whether these negligence claims can be pursued simultaneously with and alternatively to the contract claims, they fall within the contemplation of R.C. 2305.131, and are nullified by reason of the filing of the complaint more than ten years after performance. We believe that this statute nullifies not only claims for injuries caused by the defective and unsafe condition, but also the claim of injury comprised of the defective and unsafe condition itself. *Strauss, supra.* Further, we note that action upon these negligence claims may have been barred by the four-year limitation of R.C. 2305.09(D).[5] *Velotta* v. *Leo Petronzio Landscaping,*

---

[3] Professor Prosser gives the following examples at 613:

"If the defendant undertakes, for a consideration, to pay money to X, and fails to do what he has promised, there is an actionable wrong, not because the law obliges people to make such payments in general, but because he has manifested his consent to assume the obligation, toward X alone. The action in such a case is in contract. But if A negligently runs B down with his automobile, a cause of action arises, not because of any promise to refrain from the commission of the act, but because the law imposes upon A a duty, owed to anyone in his path, to refrain from inflicting such injuries. The remedy in such a case is in tort."

[4] R.C. 2305.06 reads in full:

"Except as provided in section 1302.98 of the Revised Code, an action upon a specialty or an agreement, contract, or promise in writing shall be brought within fifteen years after the cause thereof accrued."

R.C. 1302.98 provides lesser periods for breach of contract of sale of goods. Plaintiff properly argues that the legislature could have made the same exception for contracts for real estate improvements if it had really intended to include contractual claims in the bar of R.C. 2305.131. The failure to do so suggests that R.C. 2305.131 was considered by the legislature to apply only to actions in tort.

[5] R.C. 2305.09 reads in part:

"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

"* * *

"(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code."

*Inc.* (1982), 69 Ohio St. 2d 376 [23 O.O.3d 346], holds that an action in tort for damages proximately caused by the breach of a duty implied by law to construct in a workmanlike manner imposed on the builder-seller of a *completed residence* is an action in tort, to which R.C. 2305.09(D) applies. While that decision is not directly on point, and the Supreme Court specifically reserved, in note 2, the question of the applicability of R.C. 2305.09(D) to a claim relating to a *residence to be completed in the future,* logic would appear to require the conclusion that R.C. 2305.09(D) applies to all negligence actions except those that are for injury to body or personal property or for other causes, not here pertinent, enumerated in that section.

The third claim of plaintiff's complaint is addressed to breaches of three implied warranties. We believe that none of these claims is valid. Breach of an implied warranty that materials incorporated into the construction would be fit for their intended purpose has no application because the "goods" (being the materials incorporated in the garage) were not sold to plaintiff as "goods," but were incorporated in an improvement to plaintiff's real estate in accordance with the construction contract. Under the definition of "goods" in R.C. 1302.01(A)(8) and R.C. 1302.03, the implied warranty of fitness as created by R.C. 1302.28 does not apply to goods incorporated in an improvement to real estate.

Breach of an implied warranty of construction in a workmanlike manner is an action *ex delicto* and barred by R.C. 2305.09(D) under the logical extension of *Velotta* v. *Leo Petronzio Landscap-*

ing, *Inc., supra,*[6] as well as by the statute of repose *sub judice.*

Finally, there is no such claim in Ohio as one for breach of implied warranty that a real property structure, when completed, will be suitable for its intended purpose. *Mitchem* v. *Johnson* (1966), 7 Ohio St. 2d 66 [36 O.O.2d 52]. See Comment, Implied Warranties in Ohio House Sales (1981), 30 Cleve. St. L. Rev. 177.

The second assignment of error has merit insofar as it is directed at dismissal of the first, second and fifth claims under the bar of R.C. 2305.131. It has no merit as to the third, fourth and sixth claims.

### III

In its third assignment of error, plaintiff claims the trial court erred in holding that its decision was controlled by *Strauss.* We agree, because *Strauss* is distinguishable on the facts. In that case, the gravamen of the complaint as interpreted by the appellate court was to assert a claim of negligence. As illustrated by *Hibbett* v. *Cincinnati* (1982), 4 Ohio App. 3d 128, for purposes of applying the applicable statute of limitations, the cause of action is determined not from the language or form of the complaint, but from the gist (essential ground, or object) of the complaint, and in *Strauss,* the cause of action was in tort. This being so, we believe the statements in the *Strauss* opinion about the applicability of R.C. 2305.131 to claims in contract were not on point and are *obiter dicta.* We do not consider ourselves bound by them.

In the complaint *sub judice,* on the other hand, plaintiff has clearly stated separate and distinct claims, some

---

[6] While the Supreme Court reserved the question of the applicability of R.C. 2305.09(D) to a claim arising from negligence in future construction work (note 2), we believe the logical extension of the holding that the implied warranty of good workmanship as to a completed residence creates a right in tort must apply to the same warranty as to future construction.

sounding in contract and others in tort. While the tort claims are barred, the contract claims are not. The third assignment of error has merit to that extent.

## IV

In the first assignment of error, plaintiff argues that R.C. 2305.131 violates both the Ohio and the United States Constitutions, because it denies due process and equal protection of law.[7] We hold that this assignment of error is meritless.

The nullification effect of R.C. 2305.131 is not as severe as plaintiff claims, because according to our interpretation, it nullifies only actions in tort. Actions in contract survive.

We find no merit in the first assignment of error and hold that R.C. 2305.131, as interpreted, is constitutional. Due process was not violated. The legislature may abolish as well as create substantive rights of recovery. *Fassig* v. *State, ex rel. Turner* (1917), 95 Ohio St. 232, 248; *State, ex rel. Yaple,* v. *Creamer* (1912), 85 Ohio St. 349, 394 *et seq.* Due process may be violated if it is demonstrated that the legislation cannot be supported on any rational basis of fact that can reasonably be conceived to sustain it. *Klein* v. *Catalano* (1982), 386 Mass. 701, 437 N.E. 2d 514. Plaintiff has failed to demonstrate that there is no rational basis for this statute of repose.

Plaintiff does not convince us that the statute violates its rights of equal protection. Assuming *arguendo* that plaintiff has standing to raise the issue of whether the statute protects certain persons unfairly while it withholds the same protection from others, we believe the test to be applied for equal protection purposes is the "rational basis" test. The "strict scrutiny" test is not applicable, because plaintiff is not a member of a specially protected "suspect class," to use the shortcut language now in vogue, nor is plaintiff's right to sue architects and builders in tort a "fundamental right." Applying the "rational basis" test, we hold that the favored treatment given to architects, engineers, builders and others was justified. The legislature rationally intended to limit the tort liability of those potential defendants whose exposure to claims was excessively broad, considering recent changes in negligence law such as the elimination of the "privity of contract" defense and the accrual of actions upon discovery of injury,[8] when weighed against the lack of control over the possession of improvements, the unsafe condition of which caused the injury. We will not detail our reasoning further, and adopt the reasoning admirably set forth in *Yarbro* v. *Hilton Hotels Corp.* (Colo. 1982), 655 P. 2d 822, *Klein* v. *Catalano, supra,* and *O'Brien* v. *Hazelet & Erdal* (1980), 410 Mich. 1, 299 N.W. 2d 336, thus aligning ourselves with the majority rule.[9] Finally, we note that an Ohio statute of repose (being the four-year

---

[7] For purposes of this appeal, we assume that the due process and equal protection rights under the state and federal Constitutions are functionally equivalent. See *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6 [15 O.O.3d 3].

[8] Prosser, Law of Torts (4 Ed. 1971) 680-682, Section 104.

[9] The following state courts of last resort have upheld the constitutionality of similar statutes, under the provisions of the state constitution, the federal Constitution, or both:

Arkansas *Carter* v. *Hartenstein* (1970), 248 Ark. 1172, 455 S.W. 2d 918

Colorado *Yarbro* v. *Hilton Hotels Corp., supra*

Kentucky *Carney* v. *Moody* (1983), 646 S.W. 2d 40

Louisiana *Burmaster* v. *Gravity Drainage Dist. No. 2* (La. 1978), 366 So. 2d 1381

bar for malpractice and negligence claims against physicians, podiatrists, hospitals and dentists, R.C. 2305.11[B]) has recently been upheld by the Ohio Supreme Court. *Opalko* v. *Marymount Hospital, Inc.* (1984), 9 Ohio St. 3d 63.

## V

We reverse the judgment below insofar as it dismissed plaintiff's first, second and fifth claims under R.C. 2305.131, otherwise affirming that judgment as to claims three, four and six. We remand this case for further proceedings.

*Judgment reversed in part,*
*affirmed in part, and*
*cause remanded.*

PALMER, P.J., and DOAN, J. concur.

Massachusetts *Klein* v. *Catalano, supra*

Michigan *O'Brien* v. *Hazelet & Erdal, supra*

Minnesota *Calder* v. *City of Crystal* (Minn. 1982), 318 N.W. 2d 838

Mississippi *Anderson* v. *Wagner* (Miss. 1981), 402 So. 2d 320

Montana *Reeves* v. *Ille Electric Co.* (1976), 170 Mont. 104, 551 P. 2d 647

New Jersey *Rosenberg* v. *Town of North Bergen* (1972), 61 N.J. 190, 293 A. 2d 662; *Ramirez* v. *Amsted Indus., Inc.* (1981), 86 N.J. 322, 431 A. 2d 811

Oregon *Josephs* v. *Burns* (1971), 260 Ore. 493, 491 P. 2d 203

Pennsylvania *Freezer Storage* v. *Armstrong Cork Co.* (1978), 476 Pa. 270, 382 A. 2d 715

South Dakota *McMacken* v. *South Dakota* (S.D. 1982), 325 N.W. 2d 60

Tennessee *Harmon* v. *Angus R. Jessup Associates, Inc.* (Tenn. 1981), 619 S.W. 2d 522

Utah *Good* v. *Christensen* (Utah 1974), 527 P. 2d 223

Washington *Yakima Fruit & Cold Storage Co.* v. *Central Heating and Plumbing Co.* (1972), 81 Wash. 2d 528, 503 P. 2d 108

Wisconsin *United States Fire Ins. Co.* v. *E. D. Wesley Co.* (1982), 105 Wis. 2d 305, 313 N.W. 2d 833

So have the following intermediate appellate courts:

California *Salinero* v. *Pon* (1981), 124 Cal. App. 3d 120, 177 Cal. Rptr. 204

Indiana *Beecher* v. *White* (Ind. App. 1983), 447 N.E. 2d 622

New Mexico *Howell* v. *Burk* (App. 1977), 90 N.M. 688, 568 P. 2d 214, certiorari denied (1977), 91 N.M. 3

North Carolina· *Lamb* v. *Wedgewood South Corp.* (1982), 55 N.C. App. 686, 286 S.E. 2d 876, modified (1983), 308 N.C. 419, 302 S.E. 2d 868

Texas *Ellerbe* v. *Otis Elevator Co.* (Tex. Civ. App. 1981), 618 S.W. 2d 870

On the other hand, similar statutes were held to be unconstitutional in the following jurisdictions:

Alabama *Bagby Elevator and Electric Co., Inc.* v. *McBride* (Ala. 1974), 291 So. 2d 306

Florida *Overland Construction Co., Inc.* v. *Sirmons* (Fla. 1979), 369 So. 2d 572

Hawaii *Fujioka* v. *Kam* (1973), 55 Haw. 7, 514 P. 2d 568

Illinois *Skinner* v. *Anderson* (1967), 38 Ill. 2d 455, 231 N.E. 2d 588

Oklahoma *Loyal Order of Moose, Lodge 1785* v. *Cavaness* (Okla. 1977), 563 P. 2d 143

South Carolina *Broome* v. *Truluck* (1978), 270 S.C. 227, 241 S.E. 2d 739

Wyoming *Phillips* v. *ABC Builders, Inc.* (Wyo. 1980), 611 P. 2d 821

See, generally, Annotation (1979), 93 A.L.R. 3d 1242.