**HACKATHORN, Exr., Appellant,**

**v.**

**SPRINGFIELD LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, Appellee.**

[Cite as *Hackathorn v. Springfield Local School Dist.*
*Bd. of Edn.* (1994), 94 Ohio App.3d 319.]

Court of Appeals of Ohio,
Summit County.

No. 16358.

Decided April 6, 1994.

William M. Sremack, for appellant.

*Michael J. Spetrino,* for appellee.

---

Cook, Judge.

In this wrongful death case, the primary issues concern the applicability of the sovereign immunity statute, R.C. Chapter 2744. Wanda J. Hackathorn ("Hackathorn") appeals the trial court's dismissal of part of her complaint against Springfield Local School District Board of Education ("Springfield") and the trial court's granting Springfield summary judgment on the remainder of her claims. Hackathorn asserts that the trial court erred (1) in dismissing her claim for negligent performance of a proprietary function because Springfield's vocational class' construction work was a proprietary, not a governmental, function; (2) in granting summary judgment because the construction work was performed "within or on the grounds of [a] building[ ] that [was] used in connection with the performance of a governmental function," R.C. 2744.02(B)(4); and (3) in granting summary judgment on the breach of contract claim because Springfield was estopped from denying the existence of a binding contract.

We affirm because (1) Springfield's vocational class' construction work was a governmental function; (2) the construction work was not performed on the grounds of a building that was used in connection with performance of a governmental function; and (3) even if Springfield is estopped from denying the existence of a binding contract, Hackathorn did not allege any damages that could be compensated under such a claim.

## I. FACTS

### A. The Class

Springfield's vocational education program included Senior Remodeling Construction ("SRC"). SRC's purpose was to provide students with entry level skills in the building trades. Toward this end, Lee Preisse, the teacher, selected remodeling projects for the class that he determined gave students the greatest opportunity to develop skills. Among his considerations for selecting a project was whether the project provided an opportunity for the entire class to perform work in various building trades.

### B. The Project

In late 1991, Maxine V. Hackathorn ("decedent") agreed to allow Springfield's vocational students to perform remodeling work on her home. On February 3, 1992, the class cut a hole approximately four feet wide and four feet long in the northwest corner of the decedent's dining room. The hole opened to the basement approximately ten feet below and to a set of partially constructed

stairs. The hole was exposed on two sides. To protect against someone falling through the hole, a bookcase and a table were placed on one exposed side and two chairs were placed on the other. A sheet of insulating material, which had no weight bearing capability, was placed over the hole to maintain heat and keep out dampness.

On February 5, Hackathorn found the decedent lying on the partially constructed stairs in the basement directly below the hole. Beside the decedent were pieces of the insulating paper and the two chairs which had blocked one of the exposed sides of the hole.

## C. *The Suit*

Hackathorn sued Springfield for wrongful death and conscious pain and suffering. Springfield moved to dismiss the complaint, claiming that it was entitled to immunity under R.C. 2744.01 *et seq.* The trial court dismissed part of the complaint because it determined that the provision of a system of public education is a governmental function, not a proprietary function; therefore, the exception to sovereign immunity did not exist under R.C. 2744.02(B)(2).

After Hackathorn amended her complaint to include a breach of contract claim, Springfield moved for summary judgment, claiming that the exception to sovereign immunity under R.C. 2744.02(B)(4) did not apply in this case because the decedent's home was not a building used in connection with a governmental function and that no contract existed between it and the decedent. The trial court granted Springfield summary judgment.

Hackathorn appeals, asserting three assignments of error.

## II. *Sovereign Immunity Statute*

In 1985, the Ohio legislature enacted R.C. Chapter 2744. R.C. 2744.02(A) provides, as a general rule, that political subdivisions are not liable in damages for, among other things, injuries to persons. R.C. 2744.02(B), however, creates a number of exceptions to the general rule. Among those exceptions are two that are potentially applicable to this case.

First, R.C. 2744.02(B)(2) provides that political subdivisions are not immune from liability to persons injured "by the negligent performance of acts by their employees with respect to *proprietary functions* of the political subdivisions." (Emphasis added.) Next, R.C. 2744.02(B)(4) provides that political subdivisions are not immune from liability to injured persons "caused by the negligence of their employees [which] occurs within or on the grounds of buildings that are used in connection with the performance of a *governmental function,* including, but not limited to, office buildings and courthouses, but not including jails, places

of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code."  (Emphasis added.)

## Assignment of Error I

"The trial court committed error by granting appellee's motion to dismiss and finding the appellee's activity of performing construction work in private a [*sic*] residence for a fee was a governmental function thereby precluding claims based upon the negligent performance of a proprietary function."

The issue presented with this assignment of error is whether Springfield's vocational class' construction project at the decedent's private residence was a "governmental" or "proprietary" function as defined in R.C. 2744.01(C) and (G). If it was a proprietary function, then R.C. 2744.02(B)(2) would remove Springfield's immunity and the partial dismissal of Hackathorn's complaint would have been erroneous.  We, however, find that the vocational class' construction project is a governmental function.

In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.  *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 755–756.  R.C. 2744.01 defines "governmental" and "proprietary" functions.  R.C. 2744.-01(C)(2)(c) specifically states that "[t]he provision of a system of public education" is a governmental function.  The vocational class' activity at the decedent's home, therefore, arguably is specifically set forth as a governmental function.

Hackathorn, however, argues that by comparing this definition of a governmental function with the other subsections defining governmental functions and the subsections defining proprietary functions, one can conclude that the legislature only intended to include as a governmental function the policy and planning of an educational system and not the actual implementation of such system.  In support of her contention, Hackathorn points to R.C. 2744.01(C)(2)(*l*) and (G)(2)(d), which state the following:

"(2) A 'governmental function' includes * * *

"(*l*) The provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system;

" * * *

"(2) A 'proprietary function' includes * * *

" * * *

"(d) The maintenance, destruction, operation, and upkeep of a sewer system[.]"

As R.C. 2744.01(C)(2)(*l* ) and (G)(2)(d) demonstrate, the legislature has specifically classified certain functions relating to sewer systems as governmental and other functions as proprietary. Unlike the sewer system example, however, no similar distinction is made in regard to public education. The statute specifically identifies many different aspects of a sewer system that are governmental and also identifies that certain aspects of a sewer system are proprietary. No such provision specifies that any aspect of public education is proprietary. The statute only sets forth that "[t]he provision of a system of public education" is a governmental function. R.C. 2744.01(C)(2)(c). Therefore, we are not persuaded by Hackathorn's argument that the implementation of a school system is a proprietary function.

■ After considering the argument in context of the enumerated list of proprietary and governmental functions, we next consider whether the vocational class' activities constituted a governmental or proprietary function in light of the general definition of a "governmental" function. R.C. 2744.01(C) provides:

"(C)(1) 'Governmental function' means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:

"(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

"(b) A function that is for the common good of all citizens of the state;

"(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function."

While Springfield's vocational class' construction project potentially satisfies all three subsections above, it need meet only one of those sections in order to be a governmental function. First, we note that R.C. 3313.90 mandates that school districts provide programs of vocational education. Vocational education programs are for the common good of all citizens and are not specified as proprietary functions in R.C. 2744.01(G)(2). Hackathorn argues that the class was engaged in the business of construction when it performed its project at the decedent's home; therefore, the class' project does not meet one of the requirements of subsection (c) above. We disagree. The vocational class' purpose in engaging in the construction project was education. It was an educational program, not a construction business.

Thus, for the foregoing reasons, we find that the vocational project at the decedent's home was a governmental function and not a proprietary function. The first assignment of error is overruled.

### Assignment of Error II

"The trial court committed error in granting appellee's motion for summary judgment and finding that the residence where the construction work was being performed by appellee was not within or on the grounds of a building that was being used in connection with the performance of a governmental function."

■ With this assignment of error, Hackathorn argues that the decedent's home was a building used in connection with the performance of a governmental function; therefore, R.C. 2744.02(B)(4) provides an exception to Springfield's immunity. "R.C. 2744.02(B)(4) includes a general description, 'buildings that are used in connection with the performance of a governmental function,' as well as two specific examples, office buildings and courthouses." *McCloud v. Nimmer* (1991), 72 Ohio App.3d 533, 539, 595 N.E.2d 492, 496. The specific inclusion must be contrasted with the statute's specific exclusion of "jails, places of juvenile detention, workhouses, or any other detention facility." Construing the inclusion and exclusion together, we find that the statute's general classification is limited to the class which is similar to office buildings and courthouses. Unlike the excluded class of buildings, office buildings and courthouses are buildings that are open to the public. The decedent's private home was not open to the public generally and is not similar in kind to an office building or a courthouse.

Hackathorn relies on *Zimmerman v. Kalu Canfield Driving Range* (June 10, 1993), Mahoning App. No. 92 C.A. 98, unreported, 1993 WL 205014, for her argument that a private residence used by a vocational class is a building "used in connection with the performance of a governmental function." The court in *Zimmerman* found that a regularly scheduled gym class' use of a privately owned driving range qualified the range as a ground of a building used in connection with the performance of a governmental function. Although we may not agree with the conclusion in the *Zimmerman* case, we distinguish it here because a driving range, by its invitation to the general public to utilize its facilities, is similar to being open to the public.

The second assignment of error is overruled.

### Assignment of Error III

"The trial court committed error by granting appellee's motion for summary judgment and finding that appellee could not be estopped to deny the existence of a binding contract."

With this assignment of error, Hackathorn asserts that she can maintain a separate cause of action for breach of contract because Springfield's vocational class' failed to perform the work in a workmanlike manner, *i.e.,* breach of an implied warranty. In support of her assertion, Hackathorn contends that the

decedent and Springfield entered into an oral contract that cannot be denied because of the principles of estoppel.[1] The trial court in granting summary judgment to Springfield on this claim relied on R.C. 3313.33, which states that "[n]o contract shall be binding upon any board unless it is made or authorized at a regular or special meeting of such board."

An appellate court must affirm a trial court's judgment if upon review any valid grounds are found to support it. *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 174–175. Thus, even assuming a valid oral contract existed, the trial court correctly dismissed Hackathorn's breach of an implied warranty cause of action. In her complaint, Hackathorn failed to allege any economic losses which would be compensable under a breach of contract action. See *Barton v. Ellis* (1986), 34 Ohio App.3d 251, 253, 518 N.E.2d 18, 20–21. Instead, Hackathorn only alleges wrongful death damages. Further, we note that "[t]he hazards created by defective and unsafe conditions in real estate improvements fall in the tort category." *Elizabeth Gamble Deaconess Home Assn. v. Turner Constr. Co.* (1984), 14 Ohio App.3d 281, 285, 14 OBR 337, 342, 470 N.E.2d 950, 955. Thus, as Hackathorn did not allege any economic damages and her breach of an implied warranty action sounds in tort, which is barred by sovereign immunity, her third assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

DICKINSON, J., concurs.

QUILLIN, P.J., dissents.

QUILLIN, Presiding Judge, dissenting.

I agree that the vocational class construction project was a governmental function. I cannot agree that the injury did not occur "within or on the grounds of buildings that are used in connection with the performance of a governmental function." R.C. 2744.02(B)(4).

It is incongruous to say that a school district would be liable if a shop teacher negligently injured a student during a shop class at a school building but would not be liable if the identical fact pattern occurred at shop class being conducted elsewhere.

---

1. R.C. 2744.09(A) specifically states that R.C. Chapter 2744, sovereign immunity, does not apply to "[c]ivil actions that seek to recover damages from a political subdivision or any of its employees for contractual liability."