402 So.2d 320 (1981)
Shane ANDERSON, a Minor, by and through Brenda Anderson, his Mother and next Friend, and James Anderson and Brenda Anderson
v.
FRED WAGNER AND ROY ANDERSON, JR., INCORPORATED.
No. 52663.
Supreme Court of Mississippi.
July 15, 1981.
Rehearing Denied September 2, 1981.
Neil W. White, Jr., Gulfport, for appellants.
William M. Rainey, White & Morse, James O. Dukes, Bryant & Stennis, Gulfport, for appellees.
Before PATTERSON, C.J., and LEE and HAWKINS, JJ.
LEE, Justice, for the Court:
Shane Anderson, a minor, and his parents, James Anderson and Brenda Anderson, filed separate suits in the Second Circuit Court District of Harrison County, against Fred Wagner and Roy Anderson, Jr., Inc., for personal injuries sustained by Shane Anderson when he thrust his arm through a glass door while leaving Murphy Elementary School. The cases were consolidated, pleas in bar were filed by the defendants and sustained by the presiding judge, Honorable Kosta N. Vlahos. The Andersons appeal from the judgment of dismissal and assign the following error in the trial below:
The Circuit Court erred in sustaining the defendants' plea in bar in the case below, and in entering orders of dismissal and an order overruling the plaintiff's Motion to Reconsider, for the reason that Mississippi Code Annotated Section 15-1-41 (1972) is unconstitutional.
Appellant's declaration alleged that Shane Anderson's injuries were due to the negligence of appellees, who were the architect and contractor of the building, in that they failed to specify and install a door with safety glass or a safety material when they *321 knew or should have foreseen the likelihood of injuries to students using the door. The parties agree that more than ten (10) years elapsed from the date of construction and acceptance of the Murphy Elementary School building until the time of the child's injury on March 3, 1978. Consequently, appellees' pleas in bar and the resulting judgment of dismissal were based on Mississippi Code Annotated Section 15-1-41 (1972), which follows:
"No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property, and no action may be brought for contribution or indemnity for damages sustained on account of such injury except by prior written agreement providing for such contribution or indemnity, against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than ten (10) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.
This limitation shall not apply to any person, firm or corporation in actual possession and control as owner, tenant or otherwise of the improvement at the time the defective and unsafe condition of such improvement causes injury.
This limitation shall not apply to actions for wrongful death.
The provisions of this section shall apply to causes of action accruing prior to June 1, 1972, but shall not revive any cause of action barred under existing law as of that date."
Appellants contend that the statute is unconstitutional and violates the following sections of the Mississippi Constitution of 1890:
"All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay." Art. 3, § 24, Miss.Const. 1890.
"No special or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by general law, or where the relief sought can be given by any court of this state; nor shall the operation of any general law be suspended by the legislature for the benefit of any individual or private corporation or association, and in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted." Art. 4, § 87, Miss.Const. 1890.
In considering whether a statute is offensive to the Constitution, we recognize that, to be declared unconstitutional, a statute must appear unconstitutional beyond a reasonable doubt. Peterson v. State, 268 So.2d 335 (Miss. 1972); Masonite Corp. v. State Oil & Gas Board, 240 So.2d 446 (Miss. 1970). Persons attacking the constitutionality of a statute have the burden of showing clearly that it violates constitutional provisions. Carter v. Harrison County Election Comm'n., 183 So.2d 630 (Miss. 1966); Board of Education v. State Educational Finance Comm'n., 243 Miss. 782, 138 So.2d 912 (1962).
In Mississippi State Tax Comm'n. v. Tennessee Gas Transmission Co., 239 Miss. 191, 116 So.2d 550 (1959) appeal dismissed, 364 U.S. 290, 81 S.Ct. 61, 5 L.Ed.2d 39 (1960), this Court said:
"The propriety, wisdom and expediency of [an] act is a question for the Legislature and not the courts. It will be presumed that the Legislature considered the effect of the statute, and that it acted with an intent to comply with constitutional provisions and a desire to be fair and equitable. [Citations omitted]." 239 Miss. at 198-199, 116 So.2d at 552.
Statutes similar to that here involved are commonly called statutes of repose because they relax the potential liability of possible defendants. Approximately forty-seven (47) states and the District of *322 Columbia have enacted such statutes, and it has been noted that "[w]hile the statutes thus enacted are not uniform in content, the purpose for which they were enacted was uniformly to limit the time within which actions for deficiencies in the design, construction, and supervision of construction of improvements to real property, for which architects, engineers, and others in the construction industry were responsible, could be brought against such persons." 93 A.L.R.3d 1243, 1246, § 2(a) (1979).
Twenty-five (25) states have addressed the constitutionality of such statutes. Fifteen (15) of those states have upheld the statute[1] while ten (10) have held it unconstitutional.[2]
Appellants have digested the decisions in those ten states which struck statutes similar to ours and rely strongly on Phillips v. ABC Builders, Inc., 611 P.2d 821 (Wyo. 1980), a Wyoming case, wherein that state's high court held the statute void on the theory that it was not a statute of limitations but a grant of immunity from suit. As does the Mississippi statute, the Wyoming statute limited to ten (10) years the liability of persons involved in the design, planning, supervision, construction or supervision of construction. Phillips, supra, rested in large part on the decision and reasoning in Skinner v. Anderson, 38 Ill.2d 455, 431 N.E.2d 588 (1967), wherein the Illinois Supreme Court invalidated a similar statute as (1) arbitrarily insulating architects and contractors from liability while deleting other potential defendants in the same situation, (2) setting up irrational classifications, and (3) existing devoid of any reasonable legislative purpose. Other jurisdictions have relied upon Skinner in striking down their statutes.
Conversely, appellee relies upon and discusses to some extent cases from those fifteen states which have declined to accede to the constitutional challenge to their statutes. In Carter v. Hartenstein, 248 Ark. 1172, 455 S.W.2d 918 (1970), the Arkansas court said that the true issue in assembling such statutes (as ours) is whether it is fair and reasonable and an appropriate action by the legislature or whether it impinges and frustrates basic rights guaranteed by the constitution. Those statutes upholding the constitutionality of such statutes have held that they are legitimate exercises of the legislative power. In Joseph v. Burns, 260 Or. 493, 491 P.2d 203 (1971), the Oregon Supreme Court interpreted a legislature's function with reference to claims barred or prohibited by the statute, as follows:
"It has always been considered a proper function of legislatures to limit the availability of causes of action by the use of statutes of limitation so long as it is done for the purpose of protecting a recognized public interest. It is in the interest of the public that there be a definite end to the possibility of future litigation resulting from past actions. It is a permissible constitutional legislative function to balance the possibility of outlawing legitimate claims against the public need that at some definite time there be an end to potential litigation." 260 Or. 493, 491 P.2d at 207-08.
The New Jersey Supreme Court, in Rosenburg v. Town of North Bergen, 61 N.J. 190, 293 A.2d 662 (1972), deemed it error to view such statutes as applying only to the narrow field of architecture and contractors, as follows:
"For convenience we have referred to the beneficiaries of this legislation as architects and building contractors. But the favored class is much larger. It includes `any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property.' We do not attempt at this time to enumerate all of the classes of persons coming within this statutory group. These might include, as examples only, the designer of a sewage *323 plant for a development complex, a landscape gardener or a well driller. We can find here no such exclusion from the class as to justify a determination that this is a special law coming within the prohibition of our state Constitution. [Citations omitted]." 61 N.J. 190, 293 A.2d at 668.
Appellee's position is supported by strong reasoning and precedent embodied in the Pennsylvania decision of Freezer Storage, Inc. v. Armstrong Cork Co., 476 Pa. 270, 382 A.2d 715 (1978), where the Court said:
"It is manifestly rational to adjust time periods for liability for acts performed according to the substantive scope of the liability involved. The scope of liability of the class of builders differs significantly from that of the class of owners. First, the class of persons to whom builders may be liable is larger than the class to which owners may be liable. Landowners may be liable to others who come onto their land. Builders, however, may be liable both to the landowners and to others who use the land. Second, a builder may be liable for construction defects under various legal theories  contract, warranty, negligence, and perhaps strict liability in tort. Landowner liability for such defects, on the other hand, typically lies only in tort, unless the landowner is a lessor, in which case he is liable only for events occurring while the tenant is in possession... . Third, landowners can ordinarily avoid liability by taking adequate care of their land and structures and by regulating the number and type of persons entering the land and regulating the conditions of entry. The builder has no such control over his product after relinquishing it to the landowner. Landowner's liability is also controlled by the myriad of common law rules limiting liability to such classes as `undiscovered trespassers,' `mere licensees' and so forth. Builder's insurance and owner's insurance structures and pricing are also different. For any of these reasons the Legislature might rationally conclude that builders should remain liable for their mistakes for only 12 years after they complete construction, but that a landowner should remain liable for injuries caused on his land for as long as he is in possession." 382 A.2d at 718-719.
More regional support is received from Burmaster v. Gravity Drainage District # 2, 366 So.2d 1381 (La. 1978), wherein the Louisiana Supreme Court, upholding its statute of repose, said:
"We consider that there is a valid distinction between persons performing or furnishing the design, planning, supervision, inspection or observation of construction or the construction of an improvement to immovable property and a person in possession or control, as owner, lessor, tenant or otherwise, of such improvement at the time of the incident giving rise to the cause of action. After the date of registry in the mortgage office of acceptance of the work by the owner, there exists the possibility of neglect, abuse, poor maintenance, mishandling, improper modification, or unskilled repair of an improvement to immovable property by the owner, lessor or tenant. It is difficult for the architect or contractor to guard against such occurrences because, after the acceptance by the owner, the architect or contractor ordinarily has neither control of the improvement nor the right to enter or inspect the improvement. It is thus reasonable for the legislature to have concluded that those with access to and control of improvements to immovable property (owner, lessor and tenant) should not be accorded the protection of the pre-emptive period established by La.R.S. 9:2772. Moreover, subsection F specifically provides that nothing in this section shall be construed as modifying the liability or responsibility otherwise imposed by law on the owner, lessor or lessee of an immovable by reason of the design, planning, supervision, inspection or observation of construction, or construction of improvements to immovable property. Our law creates special obligations and rules of liability applicable to the owner, lessor and tenant of immovable property which have no application to the architect *324 or contractor. This is an additional ground of distinction from which the legislature could have reasonably excluded the owner, lessor and tenant of immovable property from the protection of the pre-emptive period... ." 366 So.2d at 1385-86.
Persons owning or in possession of property can make changes on the property and remove any danger or hazard existing thereon while those persons who have completed construction and/or design on the property have no right to enter upon same or to make any change in it. These distinctions have been discussed in the decisions cited above. They are real and not arbitrary or capricious and support a valid legislative exercise which the courts should recognize. Appellant contends that in the instant case, the statute bars a cause of action before it exists, but clearly, "there is no vested right in any remedy for torts yet to happen, and except as to vested rights the state legislature has full power to change or abolish existing common-law remedies and methods of procedures." Walters v. Blackledge, 220 Miss. 485, 518, 71 So.2d 433, 446 (1954).
The class of persons covered by the statute is large and we think the statute is a general law rather than local. Further, definition of the class to which the section refers is a reasonable exercise of legislative authority. Therefore, we are of the opinion that the statute is constitutional and was correctly applied by the lower court.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] Arkansas, Oregon, New Jersey, Washington, Virginia, Utah, Pennsylvania, Tennessee, Nebraska, Montana, Texas, New Mexico, Michigan, California and Louisiana.
[2] Wyoming, Illinois, Kentucky, Hawaii, Wisconsin, Oklahoma, Minnesota, South Carolina, Florida and Alabama.