Hillsborough
No. 81-379

## Henderson Clay Products, Inc.

v.

## Edgar Wood & Associates, Inc.

September 8, 1982

*Laflamme, Champagne & Moquin P.A.*, of Manchester (*Robert L. Hermann, Jr.*, on the brief and orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*Stephen E. Weyl* and *Daniel N. Gregoire* on the brief, and *Mr. Gregoire* orally), for the defendant.

BATCHELDER, J. This case comes to us on appeal from the granting, pursuant to RSA 508:4-b, of a motion to dismiss an indemnity claim. The motion was granted by the Superior Court (*Goode*, J.) upon the recommendation of the Master (*Perkins*, J., Ret.). We reverse.

The facts giving rise to the dismissal are briefly as follows. Vickery Realty Company Trust is the owner of the Nashua Mall which was constructed in the late 1960's and which was designed by Edgar H. Wood & Associates, Inc., the defendant in the present case. The defendant's architectural services with respect to the construction of the mall were fully performed on or before June 1, 1969, which was the completion date of the Woolco Department Store building, one of the enterprises located in the mall. In December 1980, Vickery Realty brought suit against the plaintiff, Henderson Clay Products, Inc., alleging that the face of the bricks

supplied by the plaintiff and used in the construction of the Woolco Department Store building were peeling, falling apart and generally disintegrating. Damages in the amount of $80,000 were sought in the underlying action against the plaintiff, Henderson Clay Products. Henderson Clay Products filed an indemnity suit against Edgar H. Wood & Associates, Inc., on February 9, 1981, claiming that the damage to the Nashua Mall building "was the result of defendant's [Edgar H. Wood & Associates, Inc.] negligent design, improper setting forth of product specifications and use of products . . . improper supervision of construction and failure to provide specifications and plans. . . ."

The defendant, relying upon the provisions of RSA 508:4-b, filed a motion to dismiss, claiming that the indemnity action was barred by the statute of limitations because it was brought more than six years after the completion of the performance of the architectural services. The plaintiff claims that the classification adopted by the legislature in the statute under consideration violates the equal protection clauses of the United States Constitution, amendment XIV and the New Hampshire Constitution, part I, articles 1 and 12. We agree.

The substance of the plaintiff's claim, simply stated, is that materialmen and suppliers of labor are burdened by a six-year statute of limitations which begins to run upon *discovery* of the cause of action while architects are relieved from liability six years after the *performance* of their services irrespective of the fact that the cause of action is not discovered until later. RSA 508:4-b provides a six-year statute of limitations for architects which in effect computes liability exposure from different starting dates with respect to materialmen and suppliers of labor. What becomes a six-year statute for one group does not necessarily become a six-year statute for the other.

 This court held in *Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825 (1980), that, when the right to tort recovery was involved, "classifications . . . 'must be reasonable, not arbitrary, *and* must rest upon some ground of difference having a fair and substantial relation to the object of the legislation' in order to satisfy State equal protection guarantees." *Id.* at 932, 424 A.2d at 831. (Citations omitted.) (Emphasis in original). The statute under consideration here has set up a classification whereby architects and contractors are singled out for protection not granted to materialmen or the suppliers of labor. It is difficult to rationally permit a situation to exist whereby the supplier of labor and material has a liability

exposure for a period of six years after the injury has been discovered or, in the exercise of due care, should have been discovered when, at the same time, the designers of the premises can be immunized from the liability before the cause of action even accrues or can be factually asserted.

In the construction of an ordinary building, whether modest or substantial, there are necessarily involved many differing talents, services and supplies. The end product is the result of collective judgments and collective efforts. If there is fault inherent in the completed structure as a result of which injury is sustained, it seems fundamentally fair that *all* those who participate in the enterprise should be held to account for their share of the blame for any negligent acts performed or defective materials supplied and thus stand on the same footing, rather than permit the apportionment of blame to be determined by the fortuity of the timing of the discovery of the underlying defect.

■ We adopt the view shared by those jurisdictions that hold similar distinctions immunizing architects are unconstitutionally discriminatory because they represent an unreasonable and arbitrary legislative classification favoring a particular class of defendants. *See, e.g., Fujioka v. Kam*, 55 Hawaii 7, 12, 514 P.2d 568, 571–72 (1973); *Skinner v. Anderson*, 38 Ill. 2d 455, 459–60, 231 N.E.2d 588, 590–91 (1967); *Loyal Order of Moose, Lodge 1785 v. Cavaness*, 563 P.2d 143, 148 (Okla. 1977); *Broome v. Truluck*, 270 S.C. 227, 230–31, 241 S.E.2d 739, 740 (1978); *Kallas Millwork Corp. v. Square D. Co.*, 66 Wis. 2d 382, 383–84, 225 N.W.2d 454, 455 (1975).

*Reversed.*

All concurred.