491 So.2d 573 (1986)
AMERICAN LIBERTY INSURANCE COMPANY, a foreign corporation, Appellant,
v.
WEST AND CONYERS, ARCHITECTS AND ENGINEERS; T.T. Watson, Inc., a Florida Corporation; and Arvinil West, Inc., Appellees.
Nos. 85-1379 to 85-1381.
District Court of Appeal of Florida, Second District.
April 11, 1986.
Herbert J. Baumann, Jr. of Wilson & Sawyer, P.A., Tampa, for appellant.
Terry A. Smiljanich of Blasingame, Forizs & Smiljanich, P.A., St. Petersburg, for appellee West and Conyers.
Claire L. Hamner of Dickinson, O'Riorden, Gibbons, Quale, Shields & Carlton, P.A., Sarasota, for appellee T.T. Watson, Inc.
George A. Vaka of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellee Arvinil West, Inc.
GRIMES, Acting Chief Judge.
These are consolidated appeals from summary judgments entered in favor of each of three defendants.
On August 19, 1981, a fire caused extensive damages to the educational building at the First Christian Church of Sarasota. As a result, American Liberty Insurance Company, the church's fire insurance carrier, paid the church $152,782.15 and became subrogated to its rights against third parties. American Liberty then sued West and Conyers, Architects and Engineers, Inc., the architect for the building, on a theory of negligent design and T.T. Watson, Inc., the contractor which built the building, on theories of negligence and implied warranty. Since American Liberty contended that the fire was caused by the *574 placement and installation of a LOK lighting fixture in the ceiling of the building, it later joined as an additional defendant Arvinil West, Inc., the company which had manufactured the lighting fixture, on a theory of product liability.
There was no dispute that all matters pertaining to the construction of the building were completed in 1960. The summary judgments were predicated upon the failure to file suit within the applicable statutes of repose.
The statute pertinent to the claims against the contractor and the architect is section 95.11, Florida Statutes (Supp. 1980), which reads in part:
Limitations other than for the recovery of real property.  Actions other than for recovery of real property shall be commenced as follows:
... .
(3) WITHIN FOUR YEARS. 
... .
(c) An action founded on the design, planning, or construction of an improvement to real property, with the time running from the date of actual possession by the owner, the date of the issuance of a certificate of occupancy, the date of abandonment of construction if not completed, or the date of completion or termination of the contract between the professional engineer, registered architect, or licensed contractor and his employer, whichever date is latest; except that, when the action involves a latent defect, the time runs from the time the defect is discovered or should have been discovered with the exercise of due diligence. In any event, the action must be commenced within 15 years after the date of actual possession by the owner, the date of the issuance of a certificate of occupancy, the date of abandonment of construction if not completed, or the date of completion or termination of the contract between the professional engineer, registered architect, or licensed contractor and his employer, whichever date is latest.
American Liberty contends that this statute is unconstitutional as applied in this case because the fifteen-year period expired before the fire occurred. It relies on Overland Construction Co. v. Sirmons, 369 So.2d 572 (Fla. 1979), in which the supreme court held unconstitutional section 95.11(3)(c), Florida Statutes (1975), which was a twelve-year statute of repose concerning actions based on the design, planning, or construction of improvements to real property. The statute was found wanting under the principle of Kluger v. White, 281 So.2d 1 (Fla. 1973), which provides that Florida's constitutional right of access to the courts can only be eliminated if "the legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown." Id. at 4. The court pointed out that the legislature had not expressed any perceived public necessity for abolishing causes of action for injuries occurring more than twelve years after the completion of improvements to real property.
Section 95.11, Florida Statutes (1985), is essentially the same as the statute stricken by the supreme court in Overland Construction Co., except that the outer time limit for bringing suit was extended from twelve to fifteen years. However, this statute, which was passed in 1980, contained a comprehensive preamble which stated:
An act relating to limitation on actions other than for recovery of real property; amending s. 95.11(3)(c), Florida Statutes; providing limitation on actions founded on the design, planning, or construction of improvements to real property; providing an effective date.
WHEREAS, architects, engineers, and contractors of an improvement to real property may find themselves named as defendants in a damage suit many years after the improvement was completed and occupied, and
WHEREAS, to permit the bringing of such actions without any limitation as to time, places the defendant in an unreasonable, *575 if not impossible, position with respect to asserting a defense, and
WHEREAS, architects, engineers, and contractors have no control over an owner whose neglect in maintaining an improvement may cause dangerous or unsafe conditions to develop over a period of years, an owner who uses an improvement for purposes for which it was not designed, or an owner who makes alterations or changes which, years afterward, may be determined to be unsafe or defective and which may appear to be a part of the original improvement, and
WHEREAS, the availability of professional liability insurance for the engineer, architect, and contractor is more difficult to obtain if they are exposed to potential liability for an indefinite period of time after an improvement to real property has been completed, and
WHEREAS, the best interest of the people of the state will be served by limiting the period of time an engineer, architect, or contractor may be exposed to potential liability after an improvement has been completed, and
WHEREAS, a need exists for the reenactment of the limitation on actions founded on the design, planning, or construction of an improvement to real property, which limitation was declared unconstitutional by the Florida Supreme Court in Overland Construction Company, Inc. v. Sirmons, 369 So.2d 572 (1979), NOW, THEREFORE,
The legislature has the last word on declarations of public policy. VanBibber v. Hartford Accident & Indemnity Insurance Co., 439 So.2d 880 (Fla. 1983). The courts are bound to give great weight to legislative determinations of fact. Miami Home Milk Producers Ass'n v. Milk Control Board, 124 Fla. 797, 169 So. 541 (1936). It is not unusual for a subsequent legislative determination of the legality of purpose to be served by an undertaking to be deemed sufficient to overcome a prior judicial decision to the contrary. State v. Ocean Highway & Port Authority, 217 So.2d 103 (Fla. 1968). In enacting the preamble to the new section 95.11(3)(c), we believe the legislature has met the requirements of Overland Construction Co., thereby sustaining the validity of the statute. Cf. Rotwein v. Gersten, 160 Fla. 736, 36 So.2d 419 (1948) (court deferred to legislative declaration of policy in upholding statute which abolished the cause of action for alienation of affection).
With respect to the product liability claim against Arvinil, the pertinent statute is section 95.031, Florida Statutes (1979), which reads in part:
(2) Actions for products liability and fraud under s. 95.11(3) must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed elsewhere in s. 95.11(3), but in any event within 12 years after the date of delivery of the completed product to its original purchaser or within 12 years after the date of the commission of the alleged fraud, regardless of the date the defect in the product or the fraud was or should have been discovered.
American Liberty originally argued that this statute was unconstitutional upon the authority of Battilla v. Allis Chalmers Manufacturing Co., 392 So.2d 874 (Fla. 1980), which was followed in Diamond v. E.R. Squibb & Sons, Inc., 397 So.2d 671 (Fla. 1981). In these cases, the supreme court held section 95.031(2) to be unconstitutional for the same reasons that section 95.11(3)(c) was declared invalid in Overland Construction Co. However, shortly after the filing of the initial brief in this appeal, the supreme court in Pullum v. Cincinnati, Inc., 476 So.2d 657 (Fla. 1985), receded from Battilla and upheld the constitutionality of section 95.031(2). The court accepted the rationale of Justice McDonald's dissenting opinion in Battilla in which he had reasoned that in view of the recent expansions in the liability of manufacturers and that because the normal useful life of *576 buildings is longer than that of products, the statute of repose for product liability actions was valid even without a legislative expression of compelling need.
In its reply brief, American Liberty now argues that its case falls within the rationale of Diamond which was left standing on its facts by the supreme court in Pullum through the vehicle of a footnote which stated:
Pullum also refers to Diamond v. E.R. Squibb and Sons, Inc., 397 So.2d 671 (Fla. 1981), as being in accord with Battilla. In Diamond, we held that the operation of section 95.031(2) operated to bar a cause of action before it accrued and thereby denied the aggrieved plaintiff access to the courts. But Diamond presents an entirely different factual context than existed in either Battilla or the present case where the product first inflicted injury many years after its sale. In Diamond, the defective product, a drug known as diethylstilbestrol produced by Squibb, was ingested during plaintiff mother's pregnancy shortly after purchase of the drug between 1955-1956. The drug's effects, however, did not become manifest until after plaintiff daughter reached puberty. Under these circumstances, if the statute applied, plaintiffs' claim would have been barred even though the injury caused by the product did not become evident until over twelve years after the product had been ingested. The legislature, no doubt, did not contemplate the application of this statute to the facts in Diamond. Were it applicable, there certainly would have been a denial of access to the courts.
476 So.2d at 659. We cannot accept American Liberty's position. In his concurring opinion in Diamond, Justice McDonald, whose views later prevailed in Pullum, explained that the reason Ms. Diamond's action could not be constitutionally barred was that it had accrued when the suspect drug was ingested even though it was not recognizable, through no fault of hers, until the injury manifested itself many years later. Here, the cause of action did not accrue until the fire occurred, and this did not take place until after the running of the twelve-year statute of repose.
The court was correct in granting summary judgment to all defendants.
Affirmed.
SCHOONOVER, and HALL, JJ., concur.