Lorraine K. HORTON and Marlys
Horton, Plaintiffs,

v.

GOLDMINER'S DAUGHTER, a Utah cor-
poration, Cal Gas Corporation, a Cali-
fornia corporation, Climate Control,
Inc., a Utah corporation (now known
as CCI Mechanical, Inc.), and Otto
Buehner & Company dba Buehner Con-
crete Company, Defendants.

Taylor F. BOYD, as the Executor of the
Estate of Darnall W. Boyd, Jr., for him-
self and the other heirs of Darnall W.
Boyd, Jr., Plaintiffs,

v.

GOLDMINER'S DAUGHTER, a Utah cor-
poration, and Cal Gas Corporation, a
California corporation, Defendants.

CAL GAS CORPORATION, a California
corporation, Third–Party Plaintiff
and Appellant,

v.

OTTO BUEHNER & COMPANY, a corpo-
ration, dba Buehner Concrete Compa-
ny, Climate Control, Inc., a Utah corpo-
ration (now known as CCI Mechanical,
Inc.), Third–Party Defendants and Ap-
pellee.

No. 870031.

Supreme Court of Utah.

Sept. 29, 1989.

Gordon L. Roberts, Spencer E. Austin,
and Julia C. Attwood, Salt Lake City, for
plaintiffs, Lorraine K. and Marlys Horton.

Jackson Howard, D. David Lambert, Pro-
vo, for plaintiff, Taylor F. Boyd, executor
of estate of Darnall W. Boyd.

Harold G. Christensen, H. James Clegg,
Bruce R. Garner, Robert S. Campbell, and
E. Barney Gesas, Salt Lake City, for defen-
dant, Goldminer's Daughter.

Philip R. Fishler and Paul M. Belnap,
Salt Lake City, for third-party defendant,
Climate Control, Inc.

Stewart M. Hanson, Fred R. Silvester,
and Charles P. Sampson, Salt Lake City,
for appellant, Cal Gas Corp.

Terry M. Plant and John N. Braithwaite,
Salt Lake City, for appellee, Otto Buehner
& Co.

STEWART, Justice:

The United States District Court for the
District of Utah, pursuant to Rule 41 of the
Rules of the Utah Supreme Court, certified

to this Court the issue of the constitutionality under Article I, section 11 of the Utah Constitution of the Utah architects and builders statute of repose, Utah Code Ann. § 78-12-25.5 (1977).[1]

On March 15, 1985, the north wing of the Goldminer's Daughter Lodge in Alta, Utah, collapsed after a propane explosion occurred in the basement. Lorraine K. Horton was injured and Darnall W. Boyd, Jr., was killed. Plaintiff Taylor F. Boyd filed a complaint in the United States District Court for the District of Utah seeking damages for the wrongful death of Darnall W. Boyd, Jr., against defendants Goldminer's Daughter Corporation ("Goldminer's Daughter"), the owner of the lodge; Cal Gas, the propane supplier and installer of the outside propane piping system at the lodge; and Buehner Concrete Co. ("Buehner Concrete"), the designer and builder of the north wing of the building which collapsed. Plaintiff Lorraine K. Horton sued the defendants for personal injuries sustained in the explosion. Cal Gas has filed a third-party claim against Goldminer's Daughter and Buehner Concrete seeking contribution and/or indemnification, and Buehner Concrete and Goldminer's Daughter have cross-claimed against Cal Gas seeking similar relief.

In December, 1986, the defendants filed motions for summary judgment. Buehner Concrete contended that the action against it was barred by Utah Code Ann. § 78-12-25.5 (1977), which prohibits suits against architects and builders brought more than seven years after the completion of the building. The plaintiffs and defendant Cal Gas opposed Buehner Concrete's motion on the ground that the statute of repose violated both the open courts and the wrongful death provisions of the Utah Constitution. The federal district court certified the following question to this Court: Does the Utah architects and builders statute of repose, Utah Code Ann. § 78-12-25.5 (1977), violate Article I, sec-

tion 11 and/or Article XVI, section 5 of the Utah Constitution? (For ease of reference, we hereafter sometimes refer to the statute as the builders statute of repose.)

Thereafter, plaintiff Boyd and the decedent's other heirs settled the wrongful death claim, and that claim was dismissed by the federal court on March 30, 1987. On April 10, 1987, Buehner Concrete moved the district court to amend the petition for certification previously accepted by this Court on the ground that the wrongful death claim under Article XVI, section 5 of the Utah Constitution was no longer justiciable. The district court directed that a notice be filed with this Court, advising the Court that the wrongful death claim had been settled and that the constitutionality of the Utah architects and builders statute of repose under Article XVI, section 5 of the Utah Constitution was no longer at issue. Buehner Concrete filed a suggestion of mootness with this Court as to the wrongful death claim. Although this Court required Buehner Concrete to brief the wrongful death issue in the petition for certification, we subsequently dismissed the issue based on the constitutionality of the builders statute of repose under Article XVI, section 5 and therefore will not address that issue.

## I. ARCHITECTS AND BUILDERS STATUTE OF REPOSE

The Utah architects and builders statute of repose, Utah Code Ann. § 78-12-25.5, was enacted in 1967. It provides that actions for personal injury, property damage, and wrongful death against construction professionals must be brought within seven years after the completion of construction, irrespective of when the cause of action arises.

Section 78-12-25.5 (1977) provides in pertinent part:

*Injury due to defective design or construction of improvement to real prop-*

---

1. The certification to this Court by the United States District Court was effected in order to resolve the issue of the constitutionality of the architects and builders statute of repose as it then existed. That statute has since been amended. *See* Utah Code Ann. § 78-12-25.5 (Supp.1989). However, since those changes appear to be stylistic only, we see no reason why the interpretation reached here should not apply equally to the amended statute.

*erty—within seven years.*—No action to recover damages for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than seven years after the completion of construction.

. . . .

The limitation imposed by this provision shall not apply to any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action.

Historically, the liability of architects, engineers, and other members of the building industry for injuries arising from building defects was limited. English courts required privity of contract to impose liability on a contractor. *See, e.g., Winterbottom v. Wright,* 10 M. & W. 109, 152 Eng.Rep. 402 (Ex. 1842). *See generally* 3 F. Harper, F. James, O. Gray, *The Law of Torts* § 18.5 (2d ed. 1986); Heller, *The District of Columbia's Architects' and Builders' Statute of Repose: Its Application and Need For Amendment,* 34 Cath.U.L.Rev. 919, 923 (1985) [hereinafter Heller]. Early American courts followed the English precedent. *See* 3 F. Harper, F. James, O. Gray, *supra,* at 706–07; Heller at 923. Thus, an architect's or builder's liability for defective or negligent design was limited to persons who built a building or caused work to be done on a structure; third persons injured as a result of an architect's or builder's negligent acts had no cause of action against the architect or builder. Un-

der the "completed and accepted" doctrine, a builder was not liable for negligence once the building was completed and accepted by the owner. *See, e.g., Ford v. Sturgis,* 56 App.D.C. 361, 14 F.2d 253 (1926). *See generally* Heller at 924.

In 1916, the landmark decision of *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916), struck down many years of precedent and abolished the privity requirement in products liability cases. The ripple effect of the *MacPherson* rule was not applied immediately to actions against builders and architects; however, in 1956, the United States Court of Appeals for the District of Columbia in *Hanna v. Fletcher,* 97 U.S.App.D.C. 310, 231 F.2d 469, *cert. denied,* 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1501 (1956), relying upon *MacPherson,* abandoned the privity requirement in an action against a building contractor. One year later, the New York Court of Appeals in *Inman v. Binghamton Housing Authority,* 3 N.Y.2d 137, 143 N.E.2d 895, 164 N.Y.S.2d 699 (1957), applied the *MacPherson* rule and eliminated the privity requirement in actions against architects, even though the court held that the architect in that case was not liable because the defect was not latent. Other courts followed. *See, e.g., Montijo v. Swift,* 219 Cal.App.2d 351, 33 Cal.Rptr. 133, 134–35 (1963); *Laukkanen v. Jewel Tea Co.,* 78 Ill.App.2d 153, 161–63, 222 N.E.2d 584, 588–89 (1966).

In response to these and subsequent cases abolishing the privity requirement for architects, engineers, and builders, the construction industry, through the American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors, responded with an extensive lobbying campaign to enact legislation limiting the duration of liability of construction professionals.[2] *See*

---

**2.** One model statute provided in part:

Section 1. No action, whether in contract (oral or written, sealed or unsealed), in tort or otherwise, to recover damages

  (i) for any deficiency in design, planning, supervision or observation of construction or

construction of an improvement to real property,

  (ii) for injury to property, real or personal, arising out of any such deficiency, or

  (iii) for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person perform-

Comment, *Recent Statutory Developments Concerning the Limitations of Actions Against Architects, Engineers, and Builders,* 60 Ky.L.J. 462, 464 (1972). Within approximately two years, 1965–1967, thirty jurisdictions enacted similar statutes or amended existing statutes to limit the duration of liability of architects, engineers, and builders. *Id.* at 464 n. 10. Eventually, forty-six states adopted some sort of limitation. Comment, *Oklahoma's Statute of Repose Limiting The Liability of Architects and Engineers for Negligence: A Potential Nightmare,* 22 Tulsa L.J. 85, 88 & n. 26 (1986). Although these statutes differ in various respects, including the time within which actions must be commenced, they are similar in that the time within which an action must be filed begins from some date associated with the completion of construction, *id.* at 88–90, not from the time of an injury. Thus, the Utah statute is a statute of repose, and not a statute of limitations, because it bars all actions against planners, designers, and builders of improvements to real property for injuries occurring after seven years from the date of construction, as well as actions based on injuries occurring within the seven-year period if no action is filed within that period. *See Berry ex rel. Berry v. Beech Aircraft Corp.,* 717 P.2d 670, 672 (Utah 1985).

## II. ARTICLE I, SECTION 11 OF THE UTAH CONSTITUTION: OPEN COURTS

Buehner Concrete asserts that this case is controlled by *Good v. Christensen,* 527 P.2d 223 (Utah 1974). In *Good,* the Court merely stated that the plaintiffs attacked the constitutionality of the statute. It did not specify which constitutional provisions were relied on. With no analysis, the opinion simply stated that "the claim is without merit." *Id.* at 225. The Court cited no authority and gave no reasons. Under these circumstances, the opinion can only be read to have disposed of a frivolous constitutional claim or what may have been a potentially meritorious constitutional claim that was presented in a frivolous manner. In *Berry v. Beech Aircraft Corp.,* 717 P.2d at 683, we stated, "Whether the Court [in *Good*] in fact addressed the merits of Article I section 11 is speculative, and the ruling, therefore, has little persuasive effect [upon the issue of the constitutionality of a statute of repose under Article I, section 11]." Accordingly, *Good* is not dispositive here.

*Berry* held the Utah product liability statute of repose unconstitutional under Article I, section 11 of the Utah Constitution. That statute provided that product liability actions were barred if filed more than six years after the date of initial purchase of the product or ten years after the date of manufacture of the product, regardless of the date on which the injury occurred. In construing Article I, section 11, the open courts provision, the Court in *Berry* declared:

> A plain reading of section 11 also establishes that the framers of the Constitution intended that an individual could not be arbitrarily deprived of effective remedies designed to protect basic individual rights. A constitutional guarantee of access to the courthouse was not intended by the founders to be an empty gesture; individuals are also entitled to a remedy by "due course of law" for injuries to "person, property, or reputation."

717 P.2d at 675 (footnote omitted).

In *Berry,* we acknowledged that the Legislature has considerable latitude in defining and modernizing the common law and statutory law, but we also recognized that Article I, section 11 imposes "some limitation on that power *for the benefit of those persons who are injured in their persons,*

---

ing or furnishing the design, planning, supervision or observation of construction, or construction of such an improvement more than four years after substantial completion of such an improvement.

Hearings on H.R. 6527, H.R. 6678 and H.R. 11544 Before Subcomm. No. 1 of the House Committee on the District of Columbia, 90th Cong., 1st Sess. 34 (1967), *quoted in* Comment, *Design for Challenge: The Kentucky Statute of Repose for Improvements to Real Property,* 73 Ky.L.J. 1143, 1147 (1984–85).

property, or reputations since they are generally isolated in society, belong to no identifiable group, and rarely are able to rally the political process to their aid." *Id.* at 676. The protection of such basic personal interests from the power of temporary majorities to infringe them is a primary function of a constitution. Certainly, the right to the protection of the law for one's person, property, and reputation is a right that is as essential to the happiness of an individual as is liberty. While democracy is the mainspring of our republican form of government, the founders of this state and this nation knew that certain basic rights could be rooted in law more effectively than can be accomplished by relying on the sometimes fickle goodwill of the popular organs of government for their protection.

The Legislature clearly has a valid interest in limiting the time within which a legal action may be commenced once it arises.

In general, statutes of limitation are intended to compel the exercise of a right of action within a reasonable time and to suppress stale and fraudulent claims so that claims are advanced while evidence to rebut them is still fresh. *See Burnett v. New York Central R.R.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965). But that is not all that this statute does. It bars all actions against all designers, planners, and supervisors of construction or improvements of real property if damage occurs after seven years from the completion of construction.

## III. APPLICABILITY OF *BERRY*

Buehner Concrete urges us to reexamine *Berry* in light of cases decided by other state courts that have upheld architects and builders statutes of repose under other open courts provisions of state constitutions.[3] According to appellee, eighteen

---

**3.** Respondent also contends that a majority of jurisdictions have upheld architects and builders statutes of repose against a variety of constitutional challenges, although a substantial minority have held such statutes unconstitutional. The following cases have upheld such statutes against the types of challenges specified: *Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F.2d 1362 (6th Cir. 1984) (construing Ohio law) ("open courts," due process, equal protection); *Britt v. Schindler Elevator Corp.*, 637 F.Supp. 734 (D.D.C.1986) (equal protection); *Carter v. Hartenstein*, 248 Ark. 1172, 455 S.W.2d 918 (1970), *appeal dismissed*, 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971) (due process, equal protection, special legislation); *Salinero v. Pon*, 124 Cal.App.3d 120, 177 Cal.Rptr. 204 (1981) (equal protection); *Yarbro v. Hilton Hotels Corp.*, 655 P.2d 822 (Colo.1982) (due process, equal protection, open courts); *Cheswold Volunteer Fire Co. v. Lambertson Constr. Co.*, 489 A.2d 413 (Del.1985) (due process, equal protection, open courts); *American Liberty Ins. Co. v. West and Conyers*, 491 So.2d 573 (Fla.Dist.Ct.App.1986) (open courts) (construing revised statute after original statute held unconstitutional in *Overland Constr. Co. v. Sirmons*, 369 So.2d 572 (Fla.1979)); *Nelms v. Georgian Manor Condominium Ass'n*, 253 Ga. 410, 321 S.E.2d 330 (1984) (open courts); *Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill*, 103 Idaho 19, 644 P.2d 341 (1982) (equal protection, "open courts," special laws); *Matayka v. Melia*, 119 Ill.App.3d 221, 74 Ill.Dec. 851, 456 N.E.2d 353 (1983) (special legislation, due process); *Beecher v. White*, 447 N.E.2d 622 (Ind.Ct.App. 1983) (equal protection, due process, open courts); *Burmaster v. Gravity Drainage Dist. No.*

2, 366 So.2d 1381 (La.1978) (equal protection, due process, open courts); *Whiting–Turner Contracting Co. v. Coupard*, 304 Md. 340, 499 A.2d 178 (1985) (equal protection, special laws, open courts); *Klein v. Catalano*, 386 Mass. 701, 437 N.E.2d 514 (1982) (equal protection, due process, open courts); *O'Brien v. Hazelet & Erdal*, 410 Mich. 1, 299 N.W.2d 336 (1980) (due process, equal protection); *Calder v. City of Crystal*, 318 N.W.2d 838 (Minn.1982) (equal protection, due process, open courts); *Anderson v. Fred Wagner & Roy Anderson, Jr., Inc.*, 402 So.2d 320 (Miss.1981) (special laws, open courts); *Reeves v. Ille Elec. Co.*, 170 Mont. 104, 551 P.2d 647 (1976) ("open courts," equal protection, due process); *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662 (1972) (due process, equal protection); *Howell v. Burk*, 90 N.M. 688, 568 P.2d 214 (Ct.App.) (special legislation, due process), *cert. denied*, 91 N.M. 3, 569 P.2d 413 (1977); *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E.2d 868 (1983) (equal protection, open courts); *Elizabeth Gamble Deaconess Home Ass'n v. Turner Constr. Co.*, 14 Ohio App.3d 281, 470 N.E.2d 950 (1984) (due process, equal protection); *Josephs v. Burns*, 260 Or. 493, 491 P.2d 203 (1971) (open courts); *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (1978) ("open courts," equal protection); *Walsh v. Gowing*, 494 A.2d 543 (R.I.1985) (open courts); *Harmon v. Angus R. Jessup Assocs., Inc.*, 619 S.W.2d 522 (Tenn.1981) ("open courts," equal protection); *McCulloch v. Fox & Jacobs, Inc.*, 696 S.W.2d 918 (Tex.Ct.App.1985) ("open courts," due process, equal protection); *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wash.2d 528, 503

states have interpreted their constitutional open courts provisions to allow architects and builders statutes of repose. Those cases were, however, based on reasoning rejected in *Berry,* and in a number of cases, they were decided under constitutional provisions having significantly different wording than the Utah Constitution. Additionally, some cases have sustained statutes modified after a prior decision holding an earlier version of the statute unconstitutional.

For example, several of the cases cited by Buehner Concrete rely on the rationale that such statutes merely define the time during which a cause of action exists and, by definition, when that time expires, no cause of action exists and none is therefore abrogated. *See Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy,* 740 F.2d 1362, 1367 (6th Cir.1984) (construing Ohio law); *Yarbro v. Hilton Hotels Corp.,* 655 P.2d 822, 827 (Colo.1982); *Cheswold Volunteer Fire Co. v. Lambertson Constr. Co.,* 489 A.2d 413, 417–18 (Del. 1985); *Burmaster v. Gravity Drainage Dist. No. 2,* 366 So.2d 1381, 1387–88 (La. 1978); *Anderson v. Fred Wagner & Roy Anderson, Jr. Inc.,* 402 So.2d 320, 324 (Miss.1981); *Reeves v. Ille Elec. Co.,* 170 Mont. 104, 110–11, 551 P.2d 647, 651 (1976); *Lamb v. Wedgewood South Corp.,* 308 N.C. 419, 440, 302 S.E.2d 868, 880 (1983).

This reasoning was expressly rejected by the Court in *Berry:*

We reject this view because it begs the question. The question, in our view, is whether there is a remedy by due course of law, and that question, is not answered by arguing that a cause of action is not abrogated but is only defined to be temporally limited. In short, the constitutional protection cannot be evaded by the semantic argument that a cause of action is not cut off but only defined to exist for a specified period of time.

717 P.2d at 679.

Buehner Concrete cites other cases for the proposition that the Legislature should not be restrained in its ability to change the law to accommodate changing conditions. *See, e.g., Cheswold Volunteer Fire Co.,* 489 A.2d at 417–18; *Klein v. Catalano,* 386 Mass. 701, 712–13, 437 N.E.2d 514, 522 (1982); *Lamb,* 308 N.C. at 441, 302 S.E.2d at 881; *Josephs v. Burns,* 260 Or. 493, 503, 491 P.2d 203, 207 (1971); *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 280–81, 382 A.2d 715, 720–21 (1978). In some instances, this is done by heavy reliance on the presumption of constitutionality generally accorded legislative enactments against federal and state due process or equal protection challenges, coupled with the requirement that there be only a rational basis for the statutory enactment. *See, e.g., Whiting–Turner Contracting*

---

P.2d 108 (1972) (equal protection); *United States Fire Ins. Co. v. E.D. Wesley Co.,* 100 Wis.2d 59, 301 N.W.2d 271 (Ct.App.1980), *aff'd in part and rev'd in part,* 105 Wis.2d 305, 313 N.W.2d 833 (1982) (due process) (construing a revised statute after earlier statute held unconstitutional in *Kallas Millwork Corp. v. Square D Co.,* 66 Wis.2d 382, 225 N.W.2d 454 (1975) (equal protection)).

In the following cases, statutes were held unconstitutional: *Jackson v. Mannesmann Demag Corp.,* 435 So.2d 725 (Ala.1983) (open courts); *Turner Constr. Co. v. Scales,* 752 P.2d 467 (Alaska 1988) (equal protection); *Overland Constr. Co. v. Sirmons,* 369 So.2d 572 (Fla.1979) (open courts); *Shibuya v. Architects Hawaii Ltd.,* 65 Haw. 26, 647 P.2d 276 (1982) (equal protection); *Skinner v. Anderson,* 38 Ill.2d 455, 231 N.E.2d 588 (1967) (equal protection); *Tabler v. Wallace,* 704 S.W.2d 179 (Ky.1985) (special legislation), *cert. denied,* 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986); *Pacific Indem. Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548 (Minn.1977)

(equal protection); *State Farm Fire & Cas. Co. v. All Elec., Inc.,* 99 Nev. 222, 660 P.2d 995 (1983) (equal protection); *Henderson Clay Prods., Inc. v. Edgar Wood & Assocs., Inc.,* 122 N.H. 800, 451 A.2d 174 (1982) (equal protection); *Loyal Order of Moose, Lodge 1785 v. Cavaness,* 563 P.2d 143 (Okla.1977) (equal protection); *Broome v. Truluck,* 270 S.C. 227, 241 S.E.2d 739 (1978) (equal protection); *Daugaard v. Baltic Coop. Build. Supply Ass'n,* 349 N.W.2d 419 (S.D.1984) (open courts); *Kallas Millwork Corp. v. Square D Co.,* 66 Wis.2d 382, 225 N.W.2d 454 (1975) (equal protection); *Phillips v. ABC Builders, Inc.,* 611 P.2d 821 (Wyo.1980) ("open courts," special laws).

Because the issue before this Court involves only the open courts provision of the Utah Constitution, the decisions of other states based on other grounds, such as equal protection and due process, provide no support for Buehner Concrete's argument that the architects and builders statute of repose is constitutional under Article I, section 11.

*Co. v. Coupard,* 304 Md. 340, 499 A.2d 178, 187–89 (1985); *Calder v. City of Crystal,* 318 N.W.2d 838, 843–44 (Minn.1982); *McCulloch v. Fox & Jacobs, Inc.,* 696 S.W.2d 918, 924–25 (Tex.Ct.App.1985).

We agree with the proposition that the Legislature must have broad power to shape the law to changing times and conditions, but we cannot ignore the fact that the framers of our Constitution—based on the experience of a number of other states—placed the open courts provision in the Utah Constitution to protect important individual rights against legislative power. Notwithstanding the force of the constitutional language, *Berry* acknowledges the generally unexceptionable proposition that one of the Legislature's chief functions is to adapt legal remedies to changing times and circumstances. The Court stated:

> We agree with and affirm those principles as general propositions, but we do not agree that a proper constitutional analysis of section 11 can be made on those principles alone. We are simply not at liberty to eviscerate a mandatory provision of our Declaration of Rights by limiting our analysis to those principles alone. That kind of analysis would result in the legislative power prevailing in every case, and would deprive the constitutional rights embraced in section 11 of any meaningful content or force. If we are free to refuse to give substance and meaning to section 11 because it stands in tension with the power of the Legislature to adjust conflicting interests and values in society, we could as well emasculate every provision in the Declaration of Rights by the same method of analysis.

717 P.2d at 678–79.

Other courts have held that the open courts provisions in their constitutions contain no guaranteed remedies or have construed them narrowly. Thus, in *Nelms v. Georgian Manor Condominium Association,* 253 Ga. 410, 321 S.E.2d 330 (1984), the Georgia Supreme Court held that the architects and builders statute of repose did not unconstitutionally bar any "right of access to the courts" under the Georgia constitution. The court concluded that the language of the open courts provision of the Georgia Constitution "was not intended to afford a general 'right of access' to the courts of this state, but that its purpose ... was to provide the right of self-representation to every person." 253 Ga. at 412, 321 S.E.2d at 332. The Utah open courts provision, on the other hand, specifically guarantees, among other things, "a remedy by 'due course of law' for injuries to 'person, property, or reputation.' " *Berry,* 717 P.2d at 675 (footnote omitted).

Still other courts have taken restricted views of their constitutional provisions. *See, e.g., Twin Falls Clinic & Hosp. Bldg. Corp. v. Hammel,* 103 Idaho 19, 24, 644 P.2d 341, 346 (1982). The Indiana Court of Appeals concluded that the Indiana architects and builders statute of repose did not violate Indiana's open courts provision merely because the statute did not provide a substitute remedy for the remedy that was restricted. *Beecher v. White,* 447 N.E.2d 622, 628 (Ind.Ct.App.1983).

In *Berry,* we rejected those approaches also and held that it would be an inexcusable enfeeblement of an express constitutional right to allow the abolition of an existing remedy necessary to secure an important constitutional right without providing an injured person "an effective and reasonable alternative remedy," unless there is "a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective." 717 P.2d at 680.

Finally, in *Harmon v. Angus R. Jessup Assocs., Inc.,* 619 S.W.2d 522, 524 (Tenn. 1981), the court concluded that its open courts provision "has traditionally been interpreted as a mandate to the judiciary and not as a limitation upon legislative power" and therefore was not violated by the statute of repose. Conversely, the Utah open courts provision clearly acts "to restrict the powers of both the courts and the Legislature," *Berry,* 717 P.2d at 675, and has never been limited to the courts. The Utah constitutional language is broad and clear in its meaning.

## IV. CONSTITUTIONALITY OF THE UTAH STATUTE

*Berry* established the following two-part test to determine whether a statute that limits one's right to remedy by due course of law for injury to one's "person, property, or reputation" violates Article I, section 11:

First, section 11 is satisfied if the law provides an injured person an effective and reasonable alternative remedy "by due course of law" for vindication of his constitutional interest. The benefit provided by the substitute must be substantially equal in value or other benefit to the remedy abrogated in providing essentially comparable substantive protection to one's person, property, or reputation, although the form of the substitute remedy may be different....

Second, if there is no substitute or alternative remedy provided, abrogation of the remedy or cause of action may be justified only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective.

717 P.2d at 680.

■ The Utah architects and builders statute of repose does not pass muster under the test established in *Berry*. First, it does not provide a reasonable alternative remedy for persons who suffer injuries or damage from the defective design or construction of improvements to real property by virtue of the negligence of one who designs, plans, or supervises the construction of, or constructs an improvement to, real estate. The statute states that it does not exempt from suit "any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action." Utah Code Ann. § 78–12–25.5(2) (1977). But persons barred by the seven-year limitation from suing one who designs, plans, or constructs may not be able to recover from those in possession and control as owner or otherwise at the time the injury occurs because there may be no negligence on their part. Furthermore, the bar does not apply to suppliers of materials against whom, unless faulty materials caused the injury, no cause of action would lie any event.

Thus, a person injured by latent defects in construction or design could be barred from any legal remedy if the injury occurs seven years after construction. Although an injured person may sue an owner or tenant rather than the builder, architect, or designer if the defect in the building or improvement is patent or sue a supplier where the materials in the building are defective, an injured party has no remedy in the case of a latent defect unless suit is filed within the seven-year limitation period.

In short, in cases where an architect, an engineer, or a builder, or any combination of the three, is responsible for a defect causing harm, the statute violates the Utah open courts provision unless "there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective." *Berry*, 717 P.2d at 680.

We know of no clear social or economic evil that § 78–12–25.5 is aimed at, and the Legislature has identified none.[4] The obvious purpose of the legislation is to end the potential threat of a lawsuit to some construction professionals. That may be a meritorious objective, but when that objective can only be achieved at the expense of forcing an injured person to forego a legal remedy, the two objectives must be balanced against each other to determine which should prevail, and that balancing has been done by the open courts clause of the Utah Constitution.

■ The notion that rights of action should be terminated because of the diffi-

---

4. In *Sun Valley Water Beds of Utah, Inc. v. Herm Hughes & Son, Inc.*, 782 P.2d 188 (Utah 1989), we review possible legislative objectives in somewhat greater detail and hold that they do not outweigh the constitutional right at stake.

culty of proof which accompanies the passage of time is not a valid justification for the statute. Although the passage of time increases the difficulty of providing reliable evidence, the difficulties of proof fall much more heavily upon the plaintiffs, who have the burden of establishing a prima facie case of negligence to survive a motion for summary judgment or directed verdict. *Jackson v. Mannesmann Demag Corp.*, 435 So.2d 725, 728 (Ala.1983) (citing *Overland Constr. Co. v. Sirmons*, 369 So.2d 572, 574 (Fla.1979)).

Certainly there is a valid social interest in providing a time of repose—in wiping the slate clean and not allowing possible mistakes of the past to becloud an individual's life forever. The practice of wiping out past debts is an ancient one, rooted, indeed, in Old Testament times. We do not believe that the open courts clause necessarily forbids forever and always all such forgiveness of mistake. What it clearly does is make certain that periods of repose only be allowed when the possibility of injury and damage has become highly remote and unexpected. Short of that, injured persons are to be allowed their remedy. The statute of repose in this case is too likely to cut off injuries that should be compensated.

A number of other courts have also reached the same conclusion we reach here and have held unconstitutional architects and builders statutes of repose under their state open courts provisions. In *Jackson v. Mannesmann Demag Corp.*, 435 So.2d 725, 727–29 (Ala.1983), the Alabama Supreme Court held that the rationale for the architects and builders statute of repose could not be distinguished from the rationale of the product liability statute of repose previously held unconstitutional under the Alabama open courts provision, and therefore the architects and builders statute was also held unconstitutional. The South Dakota Supreme Court struck down a similar statute in *Daugaard v. Baltic Cooperative Building Supply Association*, 349 N.W.2d 419 (S.D.1984), because it was a statute of "nullification which stamp[s] out our citizens' causes of action before they accrue." 349 N.W.2d at 425.

The Kentucky Supreme Court held an architects and builders statute of repose unconstitutional under the Kentucky open courts provision in *Saylor v. Hall*, 497 S.W.2d 218 (Ky.1973), on the ground that it destroyed a constitutionally protected cause of action before it legally existed. 497 S.W.2d at 225. *But see Carney v. Moody*, 646 S.W.2d 40 (Ky.1982) (effectively overruling *Saylor* on the open courts rationale). *Cf. Tabler v. Wallace*, 704 S.W.2d 179 (Ky.1985), *cert. denied*, 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986) (declaring the state's architects and builders statute of repose to be unconstitutional under the state's "special legislation" constitutional provision).

A number of other courts have held that such statutes violate equal protection provisions. *See, e.g., Fujioka v. Kam*, 55 Haw. 7, 514 P.2d 568 (1973); *Skinner v. Anderson*, 38 Ill.2d 455, 231 N.E.2d 588 (1967); *Pacific Indem. Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548 (Minn.1977); *Loyal Order of Moose, Lodge 1785 v. Cavaness*, 563 P.2d 143 (Okla.1977); *Kallas Millwork Corp. v. Square D Co.*, 66 Wis.2d 382, 225 N.W.2d 454 (1975); *Phillips v. ABC Builders, Inc.*, 611 P.2d 821 (Wyo. 1980).

The Rhode Island Supreme Court, in *Walsh v. Gowing*, 494 A.2d 543 (R.I.1985), construed its open courts provision to sustain the constitutionality of a builders statute of repose. In *Walsh*, the court concluded that an architects and builders statute of repose was constitutional under the Rhode Island open court provision because the Legislature was authorized to enact laws that "limit or place a burden upon a party's right to bring a claim" so long as it did not result in a "total denial of access to the courts." 494 A.2d at 547. The court concluded that since the Rhode Island architects and builders statute of repose permitted injured parties to sue an improver of real property within ten years after the completion of the structure and since thereafter parties could "resort to the courts for redress of injuries arising out of improvements to real property against the *owners or operators* of that improved property,"

the statute did not entirely deny access to the courts. 494 A.2d at 548 (emphasis added).

*Walsh* is not persuasive authority under the Utah open courts provision. The statute of repose operates to eliminate all causes of actions after seven years from the completion of construction for injury due to defective design or construction. Although the statute allows actions filed after seven years to proceed against those who are in "actual possession and control as owner, tenant or otherwise" of an improvement, that provides no remedy at law for those injured by latent defects created by a builder or designer. Ordinarily, those in control and possession will not know of such defects and hence would not ordinarily be guilty of negligence. In short, the statute denies a remedy for injury to one's person or property when the injury is caused by a latent defect.

In sum, the Utah architects and builders statute of repose is unconstitutional under Article I, section 11 of the Utah Constitution.

HALL, C.J., and HOWE, Associate C.J., concur.

ZIMMERMAN, Justice (concurring).

I concur with Justice Stewart that here, as in *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985) (and, I would add, *Condemarin v. University Hospital*, 775 P.2d 348 (Utah 1989)), the proponents of the legislation under attack have not carried their burden of demonstrating that the justifications advanced for the legislation in question are sufficient to outweigh the resulting infringement upon the rights guaranteed the people under article I, section 11. Therefore, the statute must be held unconstitutional. *See Condemarin*, 775 P.2d at 366–69 (Zimmerman, J., concurring in part).

DURHAM, J., concurs in the concurring opinion of ZIMMERMAN, J.